RHONDA S. NORTH *et al.*, Plaintiffs-Appellants, v. DARLENE HINKLE, as City Clerk for the City of Amboy and as a Local Election Official, Defendant-Appellee.

Second District    No. 2—97—0225

Opinion filed March 6, 1998.

Thomas Suits, of Law Offices of M. Thomas Suits, P.C., of Polo, for appellants.

Rolfe F. Ehrmann, of Ehrmann, Gehlbach, Beckman, Badger & Lee, of Dixon, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiffs, Rhonda S. North, Carl J. McCaffrey, and Christopher A. Jacobs, sought a writ of *mandamus* to compel defendant, Darlene Hinkle, as the city clerk of the City of Amboy, to certify plaintiffs' names for placement on the ballot for Amboy's April 7, 1997, municipal election. The trial court denied plaintiffs' request, and plaintiffs appealed. We affirm.

## I. FACTS

The facts of this case are not in dispute. The plaintiffs sought to have their names placed on the ballot for the City of Amboy's April 7, 1997, municipal election. Plaintiff Rhonda S. North was running for city clerk, and plaintiffs Carl J. McCaffrey and Christopher A. Jacobs were running for seats as aldermen. On the last day for the filing of nominating papers, each of the plaintiffs filed with defendant a "nonpartisan petition for nomination" and a "statement of economic interest." However, none of the plaintiffs filed a "statement of candidacy." Shortly thereafter, defendant certified the names for the April 7, 1997, ballot and did not include any of the plaintiffs' names in that certification.

Plaintiffs then filed a complaint for *mandamus* to compel defendant to certify their names for the ballot. Plaintiffs argued that defendant lacked the authority to withhold plaintiffs' names from the ballot. In support, plaintiffs cited section 10—15 of the Election Code (the Code) (10 ILCS 5/10—15 (West 1996)). Under this section, plaintiffs argued, defendant can withhold a candidate's name from the ballot only if an objection to that candidate's nominating papers has been properly filed. Because no objections were filed against plaintiffs' papers, defendant was legally obligated to certify their names for the ballot.

In response, defendant argued that, under section 10—8 of the Code (10 ILCS 5/10—8 (West 1996)), she has a duty to determine

whether a candidate's nominating papers are in apparent conformity with the Code when filed. If they are, defendant may withhold that candidate's name from the ballot only if an objection has been filed. However, if the papers do not apparently conform to the Code, defendant is under no obligation to certify that candidate's name for the ballot. Defendant contends that this is critical because, although section 10—5 of the Code (10 ILCS 5/10—5 (West 1996)) states that all nominating papers must include a statement of candidacy, plaintiffs did not file statements of candidacy. Therefore, plaintiffs' nominating papers were not "in apparent conformity" with the Code and defendant was under no obligation to certify their names for the ballot.

The trial court agreed with defendant. In its memorandum order, the trial court explained that, because plaintiffs neglected to file statements of candidacy, their nominating papers were not "in apparent conformity" with the Code. Absent apparent conformity, defendant was under no obligation to certify plaintiffs' names for the ballot. The trial court therefore denied plaintiffs' request for a writ of *mandamus*. This timely appeal followed.

## II. ANALYSIS

### A. Mootness

At the outset, we note that the April 7, 1997, election already has occurred and that all of the offices sought by plaintiffs in that election have been filled. Nevertheless, we will not treat this cause as moot.

One exception to the mootness doctrine allows a court to resolve an otherwise moot issue if the issue involves a substantial public interest. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 395 (1994). The criteria for the application of the public interest exception are (1) the public nature of the question, (2) the desirability of an authoritative determination for the purpose of guiding public officers, and (3) the likelihood that the question will recur. *Bonaguro*, 158 Ill. 2d at 395.

In this case, we are satisfied that the public interest criteria have been met. The procedures for certifying candidates for election to public office are doubtless of substantial public interest. In addition, the Illinois courts have not directly addressed the issue presented by this case in more than 80 years. Finally, we are convinced that the facts of this case are not unusual and are likely to recur. Accordingly, we will address the merits of this appeal. See *Bonaguro*, 158 Ill. 2d at 395-96.

### B. Certification of Candidates

The issue presented in this case is whether the trial court

properly concluded that, under section 10—8 of the Code, defendant possessed the authority to determine whether plaintiffs' nominating papers apparently conformed to the Code's requirements. The construction of a statute is a question of law, and therefore our review is de novo. *Peterson v. Aldi, Inc.*, 288 Ill. App. 3d 57, 63 (1997).

■ The procedures for certifying a candidate's nominating papers are set forth, in relevant part, in sections 10—8 and 10—15 of the Code. Section 10—15 states:

> "[E]ach local election official with whom certificates of nomination or nominating petitions have been filed shall certify *** the names of all candidates entitled to be printed on the ballot." 10 ILCS 5/10—15 (West 1996).

Of course, this language begs the question of which candidates' names are "entitled to be printed on the ballot." To answer this question, we must turn to section 10—8 of the Code. Section 10—8 states:

> "Certificates of nomination and nomination papers ***, *being filed as required by this Code, and being in apparent conformity with the provisions of this Act*, shall be deemed to be valid unless objection thereto is duly made in writing." (Emphasis added.) 10 ILCS 5/10—8 (West 1996).

Thus, as we read the Code, the candidates whose names are "entitled to be printed on the ballot" are those whose nominating papers are (1) filed as required by the Code, (2) in apparent conformity with the Code when filed, and (3) not subject to a duly filed objection.

In this case, there is no dispute that plaintiffs followed the appropriate procedures for filing their nominating papers. Plaintiffs filed their papers on time and with the appropriate local election official. In addition, the parties agree both that no objections were filed against plaintiffs' nominating papers and that the local electoral board did not invalidate those papers. The dispute thus arises over whether plaintiffs' nominating papers were "in apparent conformity" with the Code when filed and whether defendant possesses the authority to make that determination.

The resolution of this issue is controlled by the Illinois Supreme Court's decision in *People ex rel. Giese v. Dillon*, 266 Ill. 272, 275-76 (1914). Although the court rendered *Dillon* prior to the legislature's enactment of the Code in its current form, the issue in *Dillon* is identical to that presented in this appeal. In addition, despite its octogenarian distinction, the analysis set forth in *Dillon* remains both sensible and relevant.

In *Dillon*, the residents of La Salle filed a petition with the town clerk to have the question, "Shall this town become anti-saloon territory?" placed upon the ballot. *Dillon*, 266 Ill. at 273. When the clerk

refused to place the question on the ballot, the residents filed a petition for a writ of *mandamus* to compel the clerk to place the question on the ballot. *Dillon*, 266 Ill. at 273. In response to the petition, the clerk argued that he was under no obligation to place the question on the ballot because the submitted petition did not comply with the law. *Dillon*, 266 Ill. at 274. Specifically, the clerk argued that (1) the signatures on the ballot were not those of legal voters and were not given in person, and (2) the sworn statements at the bottom of each page were neither signed by a resident of La Salle nor sworn to by an officer having authority to administer an oath. *Dillon*, 266 Ill. at 274.

■ In affirming the trial court's granting of the writ of *mandamus*, the Illinois Supreme Court explained that the responsibility for determining whether an election petition apparently conforms to the law rests with the town clerk. *Dillon*, 266 Ill. at 275-76. Specifically, the clerk's duty is "to determine whether, upon the face of the petition, it is in compliance with the law." *Dillon*, 266 Ill. at 276. If the petition on its face appears to comply with the statutory requisites, the clerk may not look outside the petition to determine whether in fact it does comply; he must submit the question to the voters. *Dillon*, 266 Ill. at 276. Because the validity of signatures and the authority of officers cannot be determined by examining the face of an election petition, the court concluded that the petition was in apparent conformity with the law and thus that the clerk was obligated to submit the question to the voters. *Dillon*, 266 Ill. at 276.

However, the court continued, had the petition *not* appeared on its face to have complied with the statutory requisites, the clerk would have had no duty to submit the question to the voters. *Dillon*, 266 Ill. at 276. For example, by examining the face of the petition, a clerk can determine whether it contains the requisite number of signatures. *Dillon*, 266 Ill. at 276. If it does not, the petition is not in apparent conformity with the election statutes and the clerk has no duty to certify the question for the ballot. *Dillon*, 266 Ill. at 276.

■ In this case, plaintiffs concede that their nominating papers were not in apparent conformity with the Code when filed. Indeed, although section 10—5 of the Code states that all nominating papers *shall* include a statement of candidacy (10 ILCS 5/10—5 (West 1996)), plaintiffs did not file statements of candidacy with their papers. Whether nominating papers include statements of candidacy is not a question whose resolution demands a convening of the local electoral board. On the contrary, this is precisely the type of question that can be answered by a facial examination of the papers themselves. Plaintiffs' nominating papers were not in apparent conformity with the Code, and defendant was empowered to make that ministerial

determination. See *Dillon*, 266 Ill. at 276. Having made that determination, defendant was under no obligation to certify plaintiffs' names for the ballot. See *Dillon*, 266 Ill. at 276.

As our conclusion suggests, we find plaintiffs' position unconvincing. First, plaintiffs' reading of section 10—8 is contradicted by the plain language of that section. Section 10—8 does *not* state that *all* nominating papers are deemed valid unless they are subject to a duly filed objection. Rather, the Code states that all nominating papers, *"being filed as required by this Code, and being in apparent conformity with the provisions of this Act,"* are deemed valid unless they are subject to a duly filed objection. (Emphasis added.) 10 ILCS 5/10—8 (West 1996). Clearly, section 10—8 contemplates that the question of whether papers were duly filed and in apparent conformity with the law when filed is a threshold question that will be answered through a procedure other than statutory objection. Otherwise, the qualification, *"being filed as required by this Code, and being in apparent conformity with the provisions of this Act,"* aside from making no sense, would be wholly superfluous. A statute must be construed to avoid absurd results, and an interpretation that renders any part of that statute superfluous must be avoided. *Cummings v. City of Waterloo*, 289 Ill. App. 3d 474, 480 (1997). Because plaintiffs' reading of section 10—8 results in both absurdity and superfluity, we decline to adopt that reading.

We also emphasize that our conclusion is supported not only by the language of the Code and the decision in *Dillon* but also by concerns for public policy. Consider the consequences if we were to abandon *Dillon* and adopt the rule urged by plaintiffs, namely, that a local election official must certify all nominating papers unless a written objection to those papers is duly filed. A candidate who filed his nominating papers 30 days after the deadline would be entitled to have his name appear on the ballot unless some member of the public took affirmative steps to challenge those papers. Any scrap of paper containing only a scribbled name and the words "nominating papers" would have to be treated as valid, at least until the local electoral board ruled otherwise. Clearly, this rule is unworkable. There must be a gatekeeper to turn away nominating papers that do not even purport to conform to the law. As did the court in *Dillon*, we believe that the local election official serves this function.

## III. CONCLUSION

Accordingly, because plaintiffs' nominating papers were facially deficient, defendant was under no obligation to certify plaintiffs' names for the ballot. The trial court therefore properly denied plaintiffs' request for a writ of *mandamus*.

For the foregoing reasons, the judgment of the circuit court of Lee County is affirmed.

Affirmed.

INGLIS and McLAREN, JJ., concur.