THIRD DIVISION

Filed: 03/24/03 

1-03-0646

RALPH JENKINS and CLIFTON GRAHAM, JR., 
 )  Appeal from the

)  Circuit Court of

Plaintiffs-Appellants, )  Cook County

)

v. )  

)

DEBORAH M. McILVAIN, individually and in her capacity as )

City Clerk for the City of Country Club Hills, and DAVID ORR, )

in his capacity as the Cook County Clerk. )  Honorable

)  Raymond L. Jagielski

Defendants-Appellees, )  Judge Presiding.

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiffs, Ralph Jenkins and Clifton Graham, Jr., brought the instant action seeking to obtain court orders requiring Deborah M. McIlvain, City Clerk for the City of Country Club Hills, to certify their names as candidates to be placed on the ballot for the city's April 1, 2003, consolidated election and enjoining David Orr, Cook County Clerk, from printing election ballots that did not contain their names.  The circuit court entered judgment in favor of the defendants on three counts of the plaintiffs' five count complaint, and the plaintiffs now appeal.

The plaintiffs, Jenkins and Graham, timely filed nomination papers seeking to have their names placed on the ballot for the City of Country Club Hills' April 1, 2003, consolidated election as candidates for the offices of alderman of the city's Fifth Ward and mayor, respectively.  The plaintiffs included with their nomination papers receipts from the Cook County Clerk verifying that each had filed a statement of economic interests on December 27, 2002.  No objections were filed to the plaintiffs' nomination papers.  On January 23, 2003, McIlvain wrote to each of the plaintiffs and informed them that they would not be certified as a candidates for the April 1, 2003, election because: 1) their statements of economic interests were not filed in the same calendar year as their nominating petitions and 2) their nominating petitions were not bound when filed as required by section 10-4 of the Election Code (10 ILCS 5/10-4 (West 2000)).  On January 30, 2003, McIlvain certified to the Cook County Clerk the names to be listed on the ballot for the city’s April 1, 2003, election.   She did not include the plaintiffs’ names.

On February 14, 2003, the plaintiffs filed a five count complaint against McIlvain, both personally and in her capacity as City Clerk, and Orr, in his capacity as Cook County Clerk.  In count I of the complaint, the plaintiffs sought a temporary restraining order and preliminary and permanent injunctions compelling McIlvain to file an amended certification of ballot certifying their names as candidates for the April 1, 2003, election and enjoining Orr from printing and distributing election ballots without their names.  In count II, the plaintiffs sought a writ of 
mandamus
 compelling McIlvain to certify their names as candidates in the April 1, 2003, election.  In count III, the plaintiffs sought a declaratory judgment that McIlvain had no discretion to refuse to certify their names to Orr.  In counts IV and V of their complaint, the plaintiffs alleged causes of action under 42 U.S.C. §1983 (1996) against McIlvain.

On February 24, 2003, the plaintiffs filed a memorandum of law in support of their complaint, to which they attached their own affidavits.  Each plaintiff averred that his nomination papers were bound at the time of filing.

On February 26, 2003, McIlvain answered the plaintiffs' complaint, denying allegations that her failure to certify the plaintiffs as candidates in the April 1, 2003, election was improper.  That same day, McIlvain filed a memorandum of law in opposition to the plaintiffs' complaint, to which she attached two affidavits from Alison Brothen, the Finance Director for the City of Country Club Hills.  Brothen averred that she accepted the plaintiffs' nominating petitions for filing and that the petitions were not bound in any manner.

On February 27, 2003, following a hearing, the circuit court entered an order stating its finding that McIlvain "acted within her duties as mandated within the Election Code in refusing to certify the plaintiffs' names" because they did not file their statements of economic interests in the same calendar year as their nomination papers and, in doing so, entered judgment in favor of the defendants on counts I through III of the plaintiffs' complaint.  The court did not address the issues relating to the binding of the plaintiffs' nomination papers.  The circuit court's written order included the requisite language to permit the plaintiffs to appeal its ruling pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).

On March 6, 2003, the plaintiffs filed their notice of appeal from the circuit court's February 27, 2003, order.  Due to the imminence of the April 1, 2003, election, we set an expedited briefing schedule and took the matter under advisement without oral argument.  For the reasons which follow, we affirm the circuit court's judgment.

The plaintiffs’ entitlement to relief under counts I through III of their complaint depends upon the resolution of two issues: (1) whether McIlvain has the authority to refuse to certify for placement on the ballot the name of a candidate whose nomination papers are not in apparent conformity with the Election Code; and (2) whether section 10-5 of the Election Code (10 ILCS 5/10-5 (West 2000)) requires that a candidate file a statement of economic interests during the same calendar year that he files his nomination papers.  As the answer to each of these questions is a matter of statutory interpretation, our review is 
de
 
novo
.  
Sylvester v. Industrial Comm’n
. 197 Ill. 2d 225, 232, 756 N.E.2d 822 (2001).

The plaintiffs first argue that, pursuant to the Election Code, a local election authority does not have the authority to refuse to certify a person as a candidate to be listed on the election ballot, regardless of any deficiencies with his nomination papers,  unless that person’s nominating petitions have been invalidated by the electoral board.  In support of this argument, the plaintiffs rely on section 10-15 of the Election Code (10 ILCS 5/10-15 (West 2000)).  In relevant part, section 10-15 of the Election Code requires that, not less than 61 days before the date of a consolidated election, each local election official with whom nomination papers have been filed must certify to the appropriate election authority:

"the names of all candidates entitled to be printed on the ballot for offices of that political subdivision to be voted upon at such election and direct the election authority to place upon the official ballot for such election the names of such candidates in the same manner and in the same order as shown upon the certification."  10 ILCS 5/10-15 (West 2000).

Section 10-15 further provides:

"The local election officials shall certify such candidates for each office in the order in which such candidates' certificates of nomination or nominating petitions were filed in his office.  However, subject to appeal, the names of candidates whose petitions have been held invalid by the appropriate electoral board provided in Section 10-9 of this Act shall not be so certified."  10 ILCS 5/10-15 (West 2000).

This court has already rejected the plaintiffs' proposed interpretation of section 10-15 in 
North v. Hinkle
, 295 Ill. App. 3d 84, 85, 87-89, 692 N.E.2d 352 (1998), where we held that a local election official has a responsibility to examine nominating papers to determine whether, upon their face, they are in apparent conformity with the Election Code and the authority to refuse to certify the name of any candidate whose papers are not.  Compare 
Welch v. Educational Officers Electoral Board for Proviso High School District 209
, 322 Ill. App. 3d 568, 750 N.E.2d 222 (2001)(court held that election official did not have the authority to refuse to certify candidates’ names for placement on ballot on basis that their nomination papers were untimely filed where untimeliness was not apparent on face of papers and determination as to timeliness would require investigation of facts surrounding filing).  Each of the alleged deficiencies which McIlvain cited for refusing to certify the plaintiffs' names for placement on the ballot was apparent on the face of the nomination papers. Accordingly, we reject the plaintiffs’ contention that McIlvain was required to certify their names for placement on the ballot simply because their nominating petitions had not been invalidated by the local electoral board.

We now consider the plaintiffs’ contention that their nomination papers were in apparent conformity with the Election Code.  Specifically, we begin with the plaintiffs' assertion that there is no statutory requirement that a candidate’s statement of economic interests be filed within the same calendar year as his nomination papers.

Pursuant to section 10-5 of the Election Code, all petitions for nomination must be accompanied by a statement of candidacy which shall include, 
inter
 
alia
, a statement that the candidate “has filed (or will file before the close of the petition filing period) a statement of economic interests as required by the Illinois Governmental Ethics Act.”  (10 ILCS 5/10-5 (West 2000)).  Section 10-5 further provides that:

“[n]omination papers filed under this Section are not valid if the candidate named therein fails to file a statement of economic interests as required by the Illinois Governmental Ethics Act in relation to his candidacy with the appropriate officer by the end of the period for the filing of nomination papers unless he has filed a statement of economic interests in relation to the same governmental unit with that officer during the same calendar year as the year in which such nomination papers were filed.”  10 ILCS 5/10-5 (West 2000).

Contrary to McIlvain's assertion, this court did not, in 
Allord v. Municipal Officers Electoral Board for the Village of South Chicago Heights
, 288 Ill. App. 3d 897, 682 N.E.2d 125 (1997), construe the statutory section at issue here and determine that a candidate is, in fact, required to file a statement of economic interests during the same calendar year as his nomination papers.  Rather, it appears that the construction of section 10-5 of the Election Code, as it pertains to the question of the commencement of the time period during which a candidate must file a statement of economic interests, is one of first impression.

The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature.  
Kavanagh v. County of Will
, 293 Ill. App. 3d 880,  882, 689 N.E.2d 299 (1997).  The language of the statute is the best indicator of legislative intent and, where it is clear, it must be given effect without resort to other interpretive aids.  
County of Knox ex rel. Masterson v. Highlands. L.L.C.
, 188 Ill. 2d 546, 556, 723 N.E.2d 256 (1999).  Where statutory language is clear, a court should not depart from its plain meaning by reading into it exceptions, limitations, or conditions not expressed by the legislature.  
Gibbs v. Madison County Sheriff's Department
, 326 Ill. App. 3d 473, 476, 760 N.E.2d 1049 (2001).  If, however, the language of the statute is ambiguous in that it is susceptible to more than one reasonable interpretation, we may look to extrinsic aids of interpretation, such as the reason and necessity for the statute and the purpose to be served by it.  
People v. Whitney
, 188 Ill. 2d 91, 97-98, 720 N.E.2d 225 (1999); 
People v. Davis
, 296 Ill. App. 3d 923, 926, 695 N.E.2d 1363 (1998).  Where statutory language permits two constructions, one of which would render the provision absurd and illogical and the other of which would render the provision reasonable and sensible, the former construction must be avoided.  
Kaszubowski v. Board of Education of the City of Chicago
, 248 Ill. App. 3d 451, 457, 618 N.E.2d 609 (1993).

As stated, section 10-5 of the Election Code provides that a candidate's nomination papers are not valid if the candidate fails to file a statement of economic interests in relation to his candidacy  “by the end of the period for the filing of nomination papers unless he has filed a statement of economic interests in relation to the same governmental unit with that officer during the same calendar year as the year in which such nomination papers were filed.”  10 ILCS 5/10-5 (West 2000).  The plaintiffs maintain that section 10-5 requires only that a candidate file a statement of economic interests in relation to his candidacy before the end of the filing period for nomination papers.  They assert that the same is also true of section 4A-105(a) of the Local Governmental Ethics Act (Ethics Act), which provides that a candidate must file his statement of economic interests "not later than the end of the period during which he can take the action necessary under the laws of this State to attempt to qualify for nomination, election, or retention to such office if he has not filed a statement in relation to the same unit of government within a year preceding such action.”  5 ILCS 420/4A-105(a) (West 2000). The plaintiffs further maintain that the phrase “during the same calendar year as the year in which such nomination papers were filed", as used in section 10-5 of the Election Code, applies only to an incumbent candidate who does not file a  statement of economic interests in relation to his candidacy prior to the end of the filing period for nomination papers and who wishes to avail himself of the stated exception to this filing requirement by relying on a previously filed statement of economic interests.  McIlvain, on the other hand, asserts that the requirement that a statement of economic interests be filed "during the same calendar year as the year in which such nominations papers were filed" applies equally to a candidate who files an economic statement in relation to his candidacy prior to the end of the filing period for nomination papers and to an incumbent candidate who does not file an economic statement in relation to his candidacy but relies on a previously filed statement in relation to that same unit of government.

Based upon our review of the plain language of section 10-5, without more, we conclude that the statutory provision could be interpreted in more than one manner, specifically in the manner proposed by the plaintiffs and in the manner proposed by McIlvain.  We may, therefore, consider extrinsic aids of interpretation, such as the reason and necessity for the statute and the purpose to be served by it, in determining the proper construction.  
Whitney
, 188 Ill. 2d at 97-98; 
Davis
, 296 Ill. App. 3d at 926.  For the reasons which follow, we find that the plaintiffs' proposed interpretation of section 10-5 must be rejected.

The purpose behind the statutory requirement that a candidate file a statement of economic interests is to facilitate the public's right to information regarding financial dealings between the candidate and the unit of government in which he seeks an elected office.  
Requena v. Cook County Officers Electoral Board
, 295 Ill. App. 3d 728, 730, 692 N.E. 2d 1217 (1998).  Pursuant to the plaintiffs' proposed interpretation of section 10-5 of the Election Code, there is a final deadline for the filing of a statement of economic interests, namely the last date for the filing of nomination papers, but there is no initial date to the period for the filing of such statements.  Under such an interpretation, a statement filed 3 years, 5 years, or even 10 years prior to the end of the filing period for nomination papers would satisfy the requirements of section 10-5 of the Election Code.  This would certainly not facilitate the public's right to information regarding current financial dealings between a candidate and the unit of government to which he seeks election.  We note that, even under the circumstances here, where the plaintiffs filed their statements of economic interests just weeks before their nomination papers, but in a different calendar year, the public's right to information about the candidate's financial dealings with the unit of government to which they seek to be elected would be compromised. A person making a statement of economic interests is making disclosures regarding his financial interests in the preceding calendar year.  5 ILCS 420/4A-102 through 4A-104 (West 2000)).  Thus, as the plaintiffs here filed their statements of economic interests in December 2002, they were disclosing their financial interests for the year 2001, not the year 2002.  Under McIlvain's proposed interpretation of section 10-5, however, the public is ensured the most current information available about the candidate's relevant financial dealings.  Further, this interpretation would place a non-incumbent candidate on the same footing as an incumbent candidate, by requiring that both file statements of economic interest within the same calendar year as their nomination papers.  As we have stated, where statutory language permits two constructions, one of which would render the provision absurd and illogical and the other of which would render the provision reasonable and sensible, the former construction must be avoided.  
Kaszubowski
, 248 Ill. App. 3d at 457.  Accordingly, we interpret section 10-5 of the Election Code to require that a candidate must file his statement of economic interests both by the end of the period for the filing of nomination papers and during the same calendar year in which he files the nomination papers.

The period for the filing of nomination papers for the April 1, 2003, election in the City of Country Club Hills commenced on January 13, 2003, and ended on January 21, 2003.  The plaintiffs filed their statements of economic interests on December 27, 2002.  As such, we find that the circuit court properly ruled that McIlvain was justified in refusing to certify the plaintiffs' names for placement on the ballot as candidates in the April 1, 2003, election.  Due to our resolution of this issue, we find it unnecessary to consider the issues related to the binding of the plaintiff's nomination papers .

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

WOLFSON and HALL, JJ., concur.