Fourth Division
November 26, 2008

No. 1-08-2440

| | | |
|---|---|---|
| DAN DRUCK, Libertarian Party Candidate for United States Representative in the 14th Congressional District, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ILLINOIS STATE BOARD OF ELECTIONS, STATE STATE OFFICERS ELECTORAL BOARD, and ALBERT PORTER, BRYAN SCHNEIDER, PATRICK A. BRADY, JOHN R. KEITH, JESSIE SMART, WANDA REDNOUR, WILLIAM M. McGUFFAGE and ROBERT J. WALTERS, in their official capacities as members of the duly Constituted State Officers Electoral Board, and BRETT HAASE, the Objector, | ) ) ) ) ) ) ) ) ) | No. 08 CO EL 000008

Honorable Alfred J. Paul, |
| Respondents-Appellees. | ) | Judge Presiding. |

JUSTICE NEVILLE delivered the opinion of the court:

Dan Druck, the candidate, filed nomination papers to have his name placed on the ballot for the November 4, 2008, general election in the 14th Congressional District. Brett Hasse, the objector, filed objections that challenged Druck's nomination papers. The Illinois State Board of Elections (SBOE), sitting as the State Officers Electoral Board (SOEB) (1) found that it lacked the authority to address the constitutional issues raised by Druck, but (2) found that Druck failed to secure enough signatures on his nominating petitions to have his name placed on the ballot. Accordingly, the SOEB

invalidated Druck's nomination papers and sustained the objections.

After Druck's name was removed from the ballot, he filed an expedited petition in the circuit court that challenged the SOEB's decision that his nomination petitions did not contain a sufficient number of signatures for him to be certified as a candidate entitled to have his name placed on the November 2008 ballot. Druck's petition also alleged that sections 10-2 and 10-8 of the Election Code, (10 ILCS 5/10-2, 10-8 (West 2006)) interfered with his right to ballot access and placed restrictions on his and on the voters in the district's first and fourteenth amendment right (U.S. Const. Amends. I, XIV). Druck and the state defendants filed cross-motions for summary judgment, and Hasse filed a response to Druck's motion for summary judgment. The circuit court granted the state defendants' motion for summary judgment and Druck filed this appeal.

Druck filed a memorandum in the appellate court and maintains that the circuit court erred when it entered an order that granted the SOEB's motion for summary judgment thereby affirming the SOEB's decision to remove Druck's name from the ballot. Druck presents the following issues for our review: (1) whether it is a violation of Druck's first and fourteenth amendment rights for section 10-2 of the Election Code, in elections subsequent to the first election following a redistricting, to impose a minimum signature requirement for ballot access of 5% of the voters who voted in the next preceding regular election in the district; (2) whether Druck's first and fourteenth amendments rights are violated if the signature requirements for ballot access in section 10-2 of the Election Code are only enforced when objections are filed pursuant to section 10-8 of the Election Code; and (3) whether the signature requirements for ballot access in section 10-2 of the Election Code for a new party formed in a district, which are different from the signature requirements for

a new party formed in the entire state, violate Druck's first and fourteenth amendment constitutional rights and his rights under article I, sections 2,4, and 5, of the Illinois Constitution (Ill. Const. 1970, art. I, §§2,4,5). For the reasons that follow, we affirm the circuit court's September 4, 2008, order that affirmed the decision of the SOEB that removed Druck's name from the ballot.

BACKGROUND

Dan Druck filed nominating petitions containing 7,131 signatures in order to have his name placed on the ballot as the Libertarian candidate for the office of representative in the 14th Congressional District in the November 4, 2008, general election. On June 30, 2008, Brett Haase filed objections to Druck's nominating petitions that alleged that Druck failed to meet the minimum signature requirement to have his name appear on the ballot.

On July 21, 2008, the SBOE, sitting as the SOEB, considered Hasse's objections to Druck's nomination petitions. The SOEB found that Druck was required to file nominating petitions that contained no fewer than 9,995 signatures. The SOEB also found that Druck's nominating petitions only contained 7,131 signatures. The SOEB further found (1) that Druck's nominating petitions did not contain the number of signatures required to place his name on the ballot; and (2) that the SOEB lacked the authority to rule on any of the Druck's constitutional issues. Accordingly, the SOEB sustained Brett Haase's objections to Druck's nominating petition and removed Druck's name from the ballot.

On July 30, 2008, Druck filed an expedited petition in the circuit court for judicial review of the SOEB's decision (10 ILCS 5/10-10.1(West 2006)(section 10.1 provides for judicial review of the decisions of an electoral board)), and he argued that sections 10-2 and 10-8 of the Election

Code (10 ILCS 5/10-2, 10-8 (West 2006)), individually or collectively, violated the state and federal constitutions (1) because the number of signatures required was so high that it violated constitutional principles promoting access to the ballot; (2) because it is unfair for him to be removed from the ballot for having collected too few signatures when other candidates who do likewise but whose eligibility is unchallenged remain on the ballot; and (3) because Illinois has determined that 5,000 signatures are a sufficient showing of support to merit ballot access and, thus, it is a violation to ever require a greater number of signatures.

On August 13, 2008, Druck filed a motion for summary judgment in which he argued that sections 10-2 and 10-8 of the Election Code, when taken together, result in an unconstitutional denial of ballot access in the 14th Congressional District. Druck's summary judgment motion maintained that "the issue [before the circuit court was] whether the disparity in treatment of new versus established party candidates has any rational basis in view of the detrimental impact such ballot access restrictions place on the first and fourteenth amendment rights of the candidate." Druck also maintained that if 5,000 signatures are a sufficient showing of a modicum of support after redistricting, then there is no rational basis for a different number of signatures (5% of the voters voting in the district) in the elections subsequent to the first election following a redistricting. Finally, Druck maintained that section 10-8 of the Election Code virtually eliminates the signature requirement if no one files a challenge.[1]

_____

[1] Druck's claim that section 10-8 of the Election Code virtually eliminates the signature requirement if no one files a challenge is unsupported by case or statutory authority. Druck also claims that 107 of 110 electoral districts require the filing of an actual objection. However, he

1-08-2440

On August 19, 2008, the SOEB filed a cross-motion for summary judgment and argued that the issues raised by Druck have been addressed by the Seventh Circuit in Libertarian Party of Illinois v. Rednour, 108 F.3d 768 (7th Cir. 1997). The SOEB argued, based upon Rednour, that, although the rights to vote and to associate are fundamental, those rights are not absolute because the State is permitted to impose reasonable restrictions on access to the ballot and has a duty to ensure the electoral process is orderly.

The circuit court found that, although established party candidates are required to collect a smaller number of signatures in order to secure a position on the ballot, they have a requirement that Druck does not, namely, that they must also prevail in a primary election. The circuit court also found (1) that the decision of the SOEB was not against the manifest weight of the evidence; and (2) that the decision of the SOEB was not contrary to the applicable statute. Finally, Druck appeals from the circuit court's September 4, 2008, order that granted the SOEB's motion for summary judgment thereby affirming the SOEB's decision that removed Druck's name from the November 4, 2008 ballot.

ANALYSIS

Standard of Review

This court views electoral boards, such as the SOEB, as administrative agencies. Cinkus v. Village of Stickney Municipal Officers Electoral Board, 228 Ill. 2d 200, 209 (2008)(citing Kozel v.

---

does not cite authority for the proposition that, absent the filing of an objection, a candidate can get on the ballot without first filing the requisite number of signatures.

1-08-2440

State Board of Elections, 126 Ill. 2d 58, 68 (1988) ("As an administrative agency established by statute, an electoral board may exercise only the powers conferred upon it by the legislature' ")). Because the legislature vested electoral boards, and not the circuit court, with original jurisdiction over objections to nomination petitions (Cinkus, 228 Ill. 2d at 209 (citing Geer v. Kadera, 173 Ill. 2d 398, 407 (1996), and 10 ILCS 5/10-9 (West 2006))), this court reviews the decisions of the electoral board, herein the SOEB, rather than the circuit court. Siegel v. Lake County Officers Electoral Board, No. 2-08-0626, slip op. at 5 (September 9, 2008) (citing Cinkus v. Village of Stickney Municipal Officers Electoral Board, 228 Ill. 2d 200, 212 (2008), and Bergman v. Vachata, 347 Ill. App. 3d 339, 344 (2004) (citing Lockhart v. Cook County Officers Electoral Board, 328 Ill. App. 3d 838, 841 (2002))).

Moreover, because this court views electoral boards as administrative agencies (Kozel v. 126 Ill. 2d at 69), the standards of review are essentially identical. Siegel, slip op. at 5, citing Cullerton v. Du Page County Officers Electoral Board, No. 2-08-0605, slip op. at 2 (August 7, 2008). An electoral board's findings of fact are deemed to be *prima facie* true and correct and will not be overturned on appeal unless they are against the manifest weight of the evidence. Siegel, slip op. at 5 (citing Cullerton, slip op. at 2, citing Cinkus, 228 Ill. 2d at 210). However, this court is not bound by the electoral board's decisions on questions of law; therefore, those questions are given *de novo* review. Siegel, slip op. at 5 (citing Cullerton, slip op. at 2-3, citing Cinkus, 228 Ill. 2d at 210-11). Finally, an electoral board's rulings on mixed questions of law and fact (1) where the historical facts are admitted, (2) where the rule of law is undisputed, and (3) where the only remaining issue is whether the facts satisfy a statutory standard, will not be disturbed unless clearly

- 6 -

erroneous.  Siegel, slip op. at 5 (citing Cullerton, slip op. at 3, citing Cinkus, 228 Ill. 2d at 211).

## Signature Requirements for Nomination

The threshold question this court must answer is whether the minimum signature requirements in section 10-2 of the Election Code violate Druck's constitutional rights .  Druck argues that the collective application of sections 10-2 and 10-8 of the Election Code violates his first and fourteenth amendment rights.  According to Druck, (1) his constitutional rights are violated by the minimum signature requirement for ballot access for a new party in section 10-2 of the Election Code, *i.e.*, in elections subsequent to the first election following a redistricting, section 10-2 requires a new party's nomination petitions to have signatures from 5% of the voters who voted in the next preceding regular election in the district; (2) there is a violation of the first and fourteenth amendments rights of candidates and voters if the signature requirements in section 10-2 of the Election Code are only enforced when objections are filed pursuant to section 10-8 of the Election Code; and (3) the signature requirements for ballot access in section 10-2 of the Election Code for a new party formed in a district, which are different from the signature requirements for a new party formed in entire state, violate Druck's first and fourteenth amendment constitutional rights and his rights under article I, sections 2,4, and 5, of the Illinois Constitution.

The SOEB and Brett Haase, the objector, argue that the Election Code does not violate Druck's constitutional rights (1) because section 10-2 of the Election Code does not impose a severe burden on new party candidates seeking to secure ballot access; and (2) because section 10-2 of the Election Code, whether considered individually or collectively with section 10-8 of the Election Code, is supported by a legitimate governmental interest.

In Illinois, candidates that seek to have their names placed on the ballot, whether for statewide office or for political subdivisions of the state, must comply with the Election Code. 10 ILCS 5/1-1 *et seq*. (West 2006). Section 10-2 of the Election Code prescribes the signature requirements for political parties that seek to file nomination papers to have their candidate's names placed on the ballot both before and after redistricting. 10 ILCS 5/10-2 (West 2006). Section 10-8 of the Election Code prescribes the rules (1) for making objections to a candidate's nomination papers, (2) for making objections to public question petitions, and (3) for making objections to constitutional amendment petitions. 10 ILCS 5/10-8 (West 2006).

It is axiomatic that there cannot be unfettered access to the ballot and that "[s]tates may, and inevitably must, enact *reasonable* regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." (Emphasis added.) Timmons v. Twin Cities Area New Party, 520 U.S. 351, 358, 137 L. Ed.2d 589, 595 117 S. Ct. 1364, 1369 (1997)(citing Burdick v. Takushi, 504 U.S. 428, 433, 119 L. Ed. 2d 245, 253, 112 S. Ct. 2059, 2063 (1992)(" '[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process' ")(quoting Storer v. Brown, 415 U.S. 724, 730, 39 L. Ed. 2d 714, 723, 94 S. Ct. 1274, 1279 (1974), and citing Tashjian v. Republican Party of Conn., 479 U.S. 208, 217, 93 L. Ed. 2d 514, 107 S. Ct. 544, 549-50 (1986) ("The Constitution grants States broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives,'Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices")).

We are mindful of the fact that the right of qualified voters to vote and the right of citizens

to associate for political purposes are considered among our more fundamental constitutionally protected rights; however, those rights are not absolute. Munro v. Socialist Workers Party, 479 U. S. 189, 193, 93 L. Ed. 2d 499, 504, 107 S. Ct. 533, 536 (1986). States may impose reasonable restrictions upon political parties because states have an interest in requiring a demonstration of qualification in order for the elections to be run fairly and effectively. Munro, 479 U.S. at 193, 93 L. Ed. 2d at 504, 107 S. Ct. at 536, citing Storer, 415 U.S. at 730, 39 L. Ed. 2d at 723, 94 S. Ct. at 1279. This is not only a State's right, it is a duty. Rednour, 108 F. 3d at 774, citing Storer, 415 U.S. at 729, 39 L. Ed. 2d at 723, 94 S. Ct. at 1278-79, and U.S. Const. art. I, § 4, cl. 1. States also have an interest in limiting ballot access to serious candidates who can demonstrate a measurable quantum of support or a level of political viability. Lee v. Keith, 463 F. 3d 763, 769 (7th Cir. 2006), citing Anderson v. Celebrezze, 460 U.S. 780, 788 n.9, 75 L. Ed. 2d 547, 557 n.9, 103 S. Ct. 1564, 570 n.9, and Jenness v. Fortson, 403 U.S. 431, 442, 29 L. Ed. 2d 554, 91 S. Ct. 1970 (1971). The "preliminary demonstration of a 'significant modicum of support' furthers the state's legitimate interest of 'avoiding confusion, deception, and even frustration of the democratic process at the general election.'" Rednour, 108 F. 3d at 774, quoting Jenness, 403 U.S. at 442, 29 L. Ed. 2d at 562-63, 91 S. Ct. at 1976 (1971).

Whether an election takes place before or immediately after redistricting, we find that Illinois has an interest in requiring candidates and political parties seeking access to the ballot to demonstrate a modicum of support. Vestrup v. Du Page County Election Comm'n, 335 Ill. App. 3d 156, 165 (2002)(quoting Munro, 479 U. S. at 193, 93 L. Ed. 2d at 504-05, 107 S. Ct. at 536, and citing Huskey v. Municipal Officers Electoral Board, 156 Ill. App. 3d 201, 206 (1987) ("the purpose of

conditioning ballot access on a candidate's obtaining voter signatures is 'to reduce the electoral process to manageable proportions by confining ballot positions to a relatively small number of candidates who have demonstrated initiative and at least a minimal appeal to eligible voters' ")). The Illinois Election Code provides for two categories of political parties, established and new, and, except for the first election that follows redistricting, Illinois employs a percentage-based qualification system to determine into which category a given candidate or party falls. 10 ILCS 5/10-2 (West 2006); see also Rednour, 108 F.3d at 771. Section 10-2 of the Election Code provides that, in the first election following a redistricting of congressional districts, a petition to form a new party in a congressional district shall be signed by at least 5,000 qualified voters of the congressional district. 10 ILCS 5/10-2 (West 2006). Section 10-2 of the Election Code also provides that for elections other than the first election following a redistricting, a new political party that is formed for any district less than the entire state must file petitions signed by qualified voters of not less than 5% of the voters who voted at the next preceding regular election in such district. 10 ILCS 5/10-2 (West 2006). However, whenever the minimum signature requirement for the district exceeds the minimum signature requirement for the statewide new political party petitions at the next preceding statewide general election, the statewide petition signature requirements shall be the minimum for the district's new political party petition. 10 ILCS 5/10-2 (West 2006).

The United States Supreme Court has held that systems like Illinois's of " '[d]ecennial reapportionment appears to be a rational approach to readjustment of legislative representation in order to take into account population shifts and growth.' " Political Action Conference of Illinois v. Daley, 976 F.2d 335, 339 (7th Cir. 1992), quoting Reynolds v. Sims, 377 U.S. 533, 583-84, 2 L.

Ed. 2d 506, 539, 84 S. Ct. 1362, 1392-93 (1964). The United States Supreme Court has also held that 5% is a permissible minimum signature requirement for placing third-party or independent candidates on the ballot. Jenness, 403 U.S. at 442, 29 L. Ed. 2d at 563, 91 S. Ct. at 1976; see also American Party v. White, 415 U.S. 767, 782 n. 14, 39 L. Ed. 2d 744, 761 n.14, 94 S. Ct. 1296, 1307 n.14 (1974).

In light of Jenness and White, we find that the requirement in section 10-2 of the Election Code of having of a new political party file nominating petitions containing 5,000 signatures in the first election that follows a redistricting is a reasonable and nondiscriminatory way to have a party and its candidate demonstrate a modicum of support. Jenness, 403 U.S. at 442, 29 L. Ed. 2d at 562, 91 S. Ct. at 1976; see also American Party of Texas v. White, 415 U.S. 767, 782 n. 14, 94 S. Ct. 1296, 1307 n.14, 39 L. Ed.2d 744, 761 n.14 (1974). We also find, following Jenness and White, that the requirement in section 10-2 of the Election Code, in elections subsequent to the first election following redistricting, that a new party file nominating petitions containing signatures from 5% of the qualified voters who voted in the next preceding regular election in such district is a reasonable and nondiscriminatory way to have the new party and its candidate, Druck, demonstrate a modicum of support in the 14th Congressional District. Jenness, 403 U.S. at 442, 29 L. Ed.2d at 562, 91 S. Ct. at 1976; see also American Party v. White, 415 U.S. 767, 782 n. 14, 39 L. Ed. 2d 744, 761 n. 14, 94 S. Ct. 1296, 1307 n.14 (1974); Rednour, 108 F.3d at 775. In light of our finding that the 5% requirement in section 10-2 of the Election Code for a new party and its candidate in an election subsequent to the first election following redistricting is reasonable and nondiscriminatory, we hold that Druck's first and fourteenth amendment rights and his Illinois constitutional rights were not

violated, and that the federal and Illinois constitutional rights of other citizens in the 14th Congressional District were not violated by the signature requirement. Jenness, 403 U.S. at 442, 29 L. Ed. 2d at 562-6,3 91 S. Ct. at 1976; see also American Party v. White, 415 U.S. 767, 782 n. 14, 39 L. Ed. 2d at 761 n.14, 94 S. Ct. 1296, 1307 n.14 (1974); see also Timmons, 520 U.S. at 358, 137 L. Ed. 2d at 598, 117 S. Ct. 1369 (states must enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder). Accordingly, we affirm the SOEB's decision not to place Druck's name on the November 2008 ballot because Druck obtained 7,131 signatures but was required to have 9,995 signatures in order for his nomination petitions, as the Libertarian party candidate, to comply with section 10-2 of the Election Code. Munro, 479 U. S. at 193, 93 L. Ed. 2d at 504, 107 S. Ct. at 536 (states may require a showing of a modicum of support).

Challenged and Unchallenged Nomination Petitions

Next, we examine the signature requirements for nomination petitions in section 10-2 of the Election Code and the procedure for filing objections to nomination papers in section 10-8 of the Election Code to determine whether the provisions, individually or collectively, violate Druck's or voters' first and fourteenth amendment rights. Druck argues that the signature requirements in section 10-2 of the Election Code are illusory because the signature requirements are only enforced when objections are filed by an objector pursuant to section 10-8 of the Election Code. Therefore, Druck maintains that the state does not have interest in the signature requirement because it is not the state but objectors that enforce the signature requirements in section 10-2 of the Election Code. The SOEB argues that Druck's argument is contradicted by the plain language of section 10-8 of the Election Code, which provides that nomination papers are deemed valid if they are in apparent

conformity with the other requirements of the Election Code.

This issue requires this court to examine the Election Code. Illinois courts are guided by established rules of statutory construction. "The cardinal rule of statutory construction, and the one to which all other canons and rules must yield, is to ascertain and give effect to the true intent and meaning of the legislature." State Farm Mutual Automobile Insurance Co. v. Illinois Farmers Insurance Co., 226 Ill. 2d 395, 401 (2007)(citing Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co., 215 Ill. 2d 121, 134 (2005), citing Country Mutual Insurance Co. v. Teachers Insurance Co., 195 Ill. 2d 322, 330 (2001)). Our supreme court has consistently held that "[t]he most reliable indicator of legislative intent is found in the language of the statute." State Farm, 226 Ill. 2d at 401 (citing Midstate Siding & Window Co. v. Rogers, 204 Ill. 2d 314, 320 (2003), citing Michigan Avenue National Bank v. County of Cook, 191 Ill. 2d 493, 504 (2000)). When evaluating a statute, we recognize that "[s]tatutory language is afforded its plain and ordinary meaning." State Farm, 226 Ill. 2d at 401 (citing Midstate Siding & Window Co., 204 Ill. 2d at 320, citing Michigan Avenue National Bank, 191 Ill. 2d at 504). Courts review all provisions of a statutory enactment as a whole. Brucker v. Mercola, 227 Ill. 2d 502, 514 (2007), citing People ex rel. Sherman v. Cryns, 203 Ill. 2d 264, 279 (2003). We do not construe statutes in isolation and, therefore, interpret all of the words and phrases in the statute in light of other relevant provisions of the statute. Brucker, 227 Ill. 2d at 514, citing Cryns, 203 Ill. 2d at 279-80. Accordingly, to avoid rendering any portion of the statute superfluous, courts must give each word, clause and sentence of the statute, if possible, its reasonable meaning. Brucker, 227 Ill. 2d at 514, citing Sylvester v. Industrial Commission, 197 Ill. 2d 225, 232 (2001).

With these principles in mind, having previously found the signature requirements at issue in section 10-2 are reasonable and nondiscriminatory, we examine each word, clause and sentence of section 10-8 of the Election Code. Section 10-8 of the Election Code provides, in pertinent part:

"Certificates of nomination and nomination papers, and petitions to submit public questions to a referendum, *being filed as required* by this Code, *and being in apparent conformity* with the provisions of this Act, shall be deemed to be valid unless objection thereto is duly made in writing within 5 business days after the last day for filing the certificate of nomination or nomination papers or petition for a public question." (Emphasis added.) 10 ILCS 5/10-8 (West 2006).

We find that Druck's argument that nominating papers are automatically considered valid unless objections are filed pursuant to section 10-8 of the Election Code fails to consider all the words and phrases in section 10-8 of the Election Code. After reviewing all the words and phrases in section 10-8 of the Election Code, we discovered that section 10-8 clearly codifies two conditions precedent that must be complied with in order for nomination papers to be valid: (1) the nomination papers have to be filed as required by the Code, and (2) the nomination papers have to be in apparent conformity with the provisions the Election Code. 10 ILCS 5/10-8 (West 2006). Before the nomination papers are deemed valid, it is clear that the nomination papers have to be filed with the right election authority and the nomination papers have to be in apparent conformity with the Code's provisions, like the signature requirements in section10-2 of the Election Code. 10 ILCS 5/10-8 (West 2006). Accordingly, we find that section 10-8 of the Election Code imposes conditions

precedent before nomination papers are deemed valid. 10 ILCS 5/10-8 (West 2006).

We note that nomination papers for a congressional office are to be filed with the SBOE. 10 ILCS 5/10-6 (West 2006). We also note that section 10-14 of the Election Code provides that the SBOE is required to certify to the county clerk the name of each candidate whose nomination papers have been filed with the SBOE and direct the county clerk to place such candidates' names on the official ballot for the general election. 10 ILCS 5/10-14 (West 2006); see also Kozel, 126 Ill. 2d at 68. This court has held that the election official with whom the nomination papers have been filed, herein the SBOE, has a duty, before he or she certifies a candidate's name for placement on the ballot, to examine the nominating papers to determine whether upon their face they are in apparent conformity with the Election Code. Jenkins v.McIlvain, 338 Ill. App. 3d 113, 117 (2003); North v. Hinkle. 295 Ill. App. 3d 84 (1998). Nomination petitions that on their face lack the number of signatures required for ballot access in section 10-2 are not in conformity of the Election Code. 10 ILCS 5/10-2 (West 2006). Section 10-14 of the Election Code empowers the SBOE to certify and, therefore, to prevent a candidate's name from being placed on the ballot if his nomination papers are not valid. 10 ILCS 5/10-14 (West 2006); also see Jenkins, 338 Ill. App. 3d at 117; Hinkle, 295 Ill. App. 3d at 87. By requiring an election official to certify nomination papers for ballot access, the SBOE, like the objector, can prevent a candidate from gaining access to the ballot. Accordingly, section 10-8 makes it clear that there are conditions precedent that must be complied with for nomination papers to be valid, and section 10-14 makes it clear that election officials must certify a candidate's nomination papers as valid in order for the candidate's name to appear on the ballot. Jenkins, 338 Ill. App. 3d at 117; Hinkle, 295 Ill. App. 3d at 87.

We find, based upon our reading of the Election Code, (1) that section 10-2 of the Election Code imposes signature requirements; (2) that section 10-8 imposes conditions precedent for nomination papers to be valid before a candidate's name is placed on the ballot; (3) that section 10-14 requires the SBOE, the election authority with whom the nomination papers are filed, to certify the papers; and (4) that, if the nomination papers are valid on their face and the election official does not remove the candidate's name from the ballot, section 10-8 provides a vehicle for an objector to challenge the nomination papers. 10 ILCS 5/10-2, 10-8 (West 2006). Reviewing sections 10-2, 10-8, and 10-14 of the Election Code, it is clear that the Election Code gives the SBOE the power to invalidate a congressional candidate's nominating petitions. Jenkins v. McIlvain, 338 Ill. App. 3d 113, 117 (2003), citing North v. Hinkle, 295 Ill. App. 3d 84, 85, 87-89 (1998). In light of the preceding, Druck is incorrect when he argues that only objectors enforce the signature requirements in section 10-2 of the Election Code. Therefore, we find that Druck's reading of sections 10-2 and 10-8 is inconsistent with the provisions in the Election Code. Brucker, 227 Ill. 2d at 514, citing Sylvester, 197 Ill. 2d at 232.

New Party Congressional Elections in Districts Versus New Party Statewide Elections

Next, Druck argues that the 5% signature requirement for a new party and its candidate formed in a district less than the entire state restricts ballot access and violates his constitutional rights because, if the new party is formed in the entire state and runs candidates in every congressional district, it would be required to obtain a smaller number of signatures: 1% of the voters who voted in the state or 25,000 signatures, whichever is less.

The SOEB argues that Druck has forfeited this issue because this argument was not the basis

of his constitutional challenge below. According to the SOEB, the focus of Druck's constitutional challenge is the application of a 5,000-signature requirement in the first election following redistricting in a given congressional district as compared with the 5% requirement in elections that are subsequent to the first election following redistricting. The SOEB also argues that Druck lacks standing to raise this issue because there is no evidence that the Libertarian party sought to field candidates in all of the congressional districts.

We have found that states have a right to enact reasonable regulations for parties, elections, and ballots to reduce election and campaign disorder. We have also found that the signature requirements in section 10-2 for new parties and their candidates, (1) signatures from 5,000 voters for the first election that follows redistricting and (2) signatures from 5% of the voters in the district for the election subsequent to the first election following redistricting, are reasonable and nondiscriminatory. There is no evidence in this record that indicates it is unreasonable or discriminatory for the State to have one signature requirement for new parties formed in the entire state and a different signature requirement for new parties formed in districts.

We also note that Druck is a Libertarian candidate for election in the 14th Congressional District, and he is not a candidate with a new party formed in the entire state. Second, we note that there is no evidence in the record that the Libertarian party was formed for the entire state or attempted to run candidates in all 19 congressional districts. Third, we note that there are no other Libertarian party candidates from other districts that are parties to this appeal. Fourth, there is no evidence in the record that the minimum signature requirement for the district exceeds the minimum signature requirement for statewide new political party petitions, thus bringing into play the state-

wide petition requirements. Accordingly, we see no need to consider the signature requirements for a new party formed in the entire state. <u>DeLuna v. Burciaga</u>, 223 Ill. 2d 49, 82 (2006) (we forgo the determination of issues unnecessary to the outcome of the case).

CONCLUSION

In light of the foregoing, we affirm the SOEB's invalidation of Druck's nomination papers and his removal from the ballot for the November 4, 2008, election in the 14th Congressional District.

Affirmed.

CAMPBELL, J., and GALLAGHER, J., concur.