# Illinois Official Reports

## Appellate Court

> ### *Graves v. Cook County Republican Party*, 2020 IL App (1st) 181516

| | |
|---|---|
| Appellate Court Caption | STEVEN S. GRAVES, Plaintiff-Appellee, v. COOK COUNTY REPUBLICAN PARTY and CHICAGO REPUBLICAN PARTY, Defendants (Chicago Republican Party, Defendant-Appellant). |
| District & No. | First District, Fifth Division<br>No. 1-18-1516 |
| Filed<br>Rehearing denied | February 14, 2020<br>May 15, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-CH-05328; the Hon. Robert Bertucci, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Stephen F. Boulton, of Chicago, for appellant.<br><br>No brief filed for appellee. |
| Panel | JUSTICE HALL delivered the judgment of the court, with opinion.<br>Justice Rochford concurred in the judgment and opinion.<br>Justice Delort specially concurred, with opinion. |

**OPINION**

¶ 1        This appeal concerns the timing of a bylaw revision by the Cook County Republican Party that declared a vacancy for the office of Republican Ward Committeeman when an elected or appointed committeeman votes or has voted in the primary for another political party during the previous eight years.

¶ 2        Plaintiff Steven Graves filed a declaratory action against the Cook County Republican Party and the Chicago Republican Party (collectively, the GOP), seeking a declaration that he was the Republican Ward Committeeman for the 19th Ward in the City of Chicago following the March 2016 primary. The circuit court entered a declaratory judgment in favor of plaintiff and denied defendants' motion to reconsider. The Chicago Republican Party has appealed, contending that the circuit court erred in entering judgment in plaintiff's favor because such judgment violated its constitutional right of freedom of association. Although plaintiff has not filed a brief on appeal, we will consider the appeal pursuant to the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 131-33 (1976). For the following reasons, we affirm.

## I. BACKGROUND

¶ 4        The facts are taken from the common law record as defendant has not filed a report of proceedings with its appeal.

¶ 5        This case was before the circuit court on the validity of the March 15, 2016, election results for the position of 19th Ward Republican Committeeman. Plaintiff filed his nomination papers with the Chicago Board of Elections for election to the office of Chicago's 19th Ward Republican Ward Committeeman for the March 2016 primary.[1]

¶ 6        Based on perceived infiltration of the Republican Party by Democratic Party operatives, the bylaws of the Cook County Republican Party were amended on March 9, 2016, to include the following section:

> "SECTION 3: A vacancy shall exist in the office of Republican Committeeman in any ward or township in which an elected or appointed committeeman votes, or has voted, in the primary for another political party in the previous eight years."

¶ 7        Plaintiff received 2115 of the 3988 votes cast for the Republican Ward Committeeman of the 19th Ward in the March 15, 2016, election. On April 5, 2016, Cook County Clerk David Orr issued a Certificate of Election certifying that plaintiff had been elected as Republican Ward Committeeman for the 19th Ward for a full four-year term.

¶ 8        On April 12, 2016, the Chairman of the GOP sent plaintiff a letter stating that plaintiff failed to meet the eligibility requirements for the office of ward committeeman based on his previous voting in primaries of another political party and that a vacancy for that office existed in his ward.

¶ 9        Plaintiff filed the subject complaint for declaratory judgment in the chancery division on April 15, 2016, naming the GOP as defendants. Plaintiff sought a declaration that he was the

---

[1] Plaintiff was elected to the position of "Committeeman." The statutory title is now "Committeeperson" (Pub. Act 100-1027 (eff. Jan. 1, 2019)), and persons are running for election in the March 17, 2020, primary election for that office.

duly elected Republican Committeeman for the 19th Ward in the City of Chicago and that he be allowed to serve in that position.

¶ 10    In his complaint, plaintiff alleged that the bylaw in question conflicted with section 7-8 of the Election Code (Code) (10 ILCS 5/7-8(b) (West 2016)), which required only that each candidate for ward committeeman be a resident of and in the ward where he sought to be elected ward committeeman.

¶ 11    The GOP filed a section 2-619(9) (735 ILCS 5/2-619(9) (West 2016)) motion to dismiss on May 25, 2016. In their motion, defendants contended that it had an absolute right, pursuant to the first amendment right of association, to set eligibility requirements for its leadership, pursuant to *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214 (1989). While Illinois law provides for the election of ward committeemen under section 7-8 of the Code, the GOP argued that a ward committeeman was not a public official. Rather, he was a party officer, and as such, was strictly and only a political functionary. See *Orbach v. Axelrod*, 100 Ill. App. 3d 973, 977 (1981). The GOP maintained that the State could not interfere with its right of association absent a compelling state interest and that section 7-8 of the Code could not supersede an internal bylaw of the GOP.

¶ 12    The GOP's motion was entered and continued to June 28, 2016, and then again to July 28, 2016. On July 28, 2016, the case was transferred to the county division because it pertained to the March 2016 elections.

¶ 13    On October 21, 2016, plaintiff filed a "Motion to Advance," requesting that the circuit court advance the matter for further proceedings. The GOP was granted leave to file an amended motion to dismiss on January 11, 2017, and a hearing was scheduled for February 22, 2017. On February 22, 2017, the circuit court entered an order continuing the GOP's motion until March 14, 2017.

¶ 14    On March 8, 2017, the GOP filed a second 2-619(9) motion to dismiss, contending again that the United States Supreme Court had repeatedly barred State interference with the internal procedures of a political party to select leadership. Additionally, the GOP contended that the Northern District of Illinois had recently decided a case that upheld the bylaw over the Code based on the first amendment (U.S. Const., amend. I). *Cook County Republican Party v. Board of Election Commissioners*, 207 F. Supp. 3d 841 (N.D. Ill. 2016). The GOP sought dismissal with prejudice because the judgment sought by plaintiff would be unconstitutional under the first and fourteenth amendments. U.S. Const., amends. I, XIV.

¶ 15    The circuit court denied the GOP's motion on March 14, 2017, and ordered it to file its answer and motion for summary judgment by March 29, 2017. The court set a hearing on dispositive motions for May 23, 2017.

¶ 16    The GOP filed its summary judgment motion on May 23, 2017, which the court accepted late over plaintiff's objection. Plaintiff's motion for default, filed on June 9, 2017, was also continued and both motions were set for hearing on August 7, 2017. The record does not reflect the disposition of plaintiff's motion; however, the GOP's motion was subsequently set for hearing on September 8, 2017, when it was then entered and continued until September 22, 2017.

¶ 17    The circuit court entered a written memorandum opinion and order after briefing by both parties and oral argument on September 22, 2017. In its order, the circuit court found that plaintiff filed his nomination papers in November 2015, and at that time, there was no objection

to his candidacy. Later in 2015, the GOP became aware that a large number of people with no Republican primary voting record had filed to appear on the ballot for Republican Ward Committeemen in Chicago wards. When early voting began on February 4, 2016, for the March 15, 2016, primary election, plaintiff was still a viable candidate under the Republican bylaws as the bylaw provision in question was not adopted until March 9, 2016. While the GOP stated that the bylaw was amended in advance of the March 2016 Republican primary, the circuit court found that the amendment occurred during the early voting period for the primary and, further that it was during the primary that plaintiff arguably became ineligible to serve as a ward committeeman under the bylaws.

¶ 18    The circuit court further noted that Illinois courts favor ballot access and guard the rights of voters to endorse and nominate the candidates of their choice, citing *Lyons MVP Party v. Lyons, Illinois, Municipal Officers Electoral Board*, 407 Ill. App. 3d 1004 (2011). The court also noted that a state indisputably has a compelling interest in preserving the integrity of its election process, citing *Eu*, 489 U.S. at 232. In this case, the court found that the GOP had essentially invalidated the election results by virtue of a bylaw that disqualified plaintiff as a candidate after voting began. Under those facts, the court found that the GOP's right to judgment as a matter of law was not clear and free from doubt, as the right to vote is a fundamental right that deserves zealous protection by the courts. See *Tully v. Edgar*, 171 Ill. 2d 297, 306-08 (1996). The circuit court denied the GOP's motion for summary judgment.

¶ 19    On November 20, 2017, plaintiff subsequently filed a motion for summary judgment based on the court's ruling of September 22, 2017. The circuit court entered an order directing the GOP to respond and file their motion to reconsider by December 4, 2017, and set a hearing date of December 27, 2017. The GOP subsequently filed a motion to reconsider the circuit court's September 22, 2017, denial of its summary judgment motion on December 7, 2017. Both motions were denied on December 27, 2017, and the case was continued to February 1, 2018, for status.

¶ 20    On January 5, 2018, the case was reassigned to another judge due to the retirement of the sitting judge who was presiding over the case.

¶ 21    An undated draft order indicates that the matter was entered and continued, and the GOP was granted leave to file a supplemental memorandum regarding the issue of public versus private duties by February 15, 2018, and the matter was continued until March 9, 2018.

¶ 22    On February 20, 2018, the GOP filed its supplemental memorandum regarding section 25-6 of the Code (10 ILCS 5/25-6 (West 2018)), contending that it was raised for the first time at "this stage of the proceeding" by the circuit court *sua sponte*, having never been raised by [p]laintiff at any time. In its memorandum, the GOP contended that any claimed "compelling state interest" created by section 25-6 of the Code was subject to the specific and fundamental constitutional rights granted to it under the first amendment and that the Code could not override the bylaw. Specifically, the GOP contended that political party committeemen were not public officers and that any assertion of a compelling state interest based on section 25-6 and the occasional appointment of legislators by legislative committees of committeemen failed on multiple grounds. First, it argued that the state-created interest could not block application of the first amendment under the supremacy clause. U.S. Const., art. VI. Second, the GOP argued that the specific guarantees of freedom of association in the first amendment prevailed over the general regulatory interest in elections granted to the State of Illinois under the United States Constitution. Third, it asserted that upon application of principles of law used

to interpret statutes to avoid or limit constitutional conflict and deprivations, section 25-6 must be interpreted as permitting application of the bylaw, or both sections 7-8 and 25-6 of the Code must be declared unconstitutional because they created a deprivation of first amendment rights.

¶ 23　　The record contains a draft order dated March 9, 2018, indicating that the matter was before the court for ruling on plaintiff's complaint for declaratory judgment, which was granted, with the parties to return on March 16, 2018, for further entry of specific findings. On March 16, 2018, the circuit court entered a written order finding that:

> "The Republican Party having changed its rules concerning the eligibility of publicly elected Committeemen, a position that includes public as well as private party responsibilities, after voting started in the 2016 Illinois Primary Election, did so in violation of the fundamental right to vote. Therefore, Plaintiff's Complaint for Declaratory Judgement [*sic*] is hereby granted."

¶ 24　　The GOP filed a motion to reconsider on April 13, 2018, contending that the court improperly applied the relevant law to the issue. In its motion, the GOP claimed that the circuit court's order was "disturbing at best for democracy" and created paradoxes. Additionally, it argued that the decision avoided the precedents of the United States Supreme Court and ignored the constitution.

¶ 25　　On June 15, 2018, the circuit court entered a written ruling on the GOP's motion to reconsider, noting that the GOP did not schedule the motion on the court call when it was filed, the GOP did not provide the court with a courtesy copy of the motion, and the court learned about the motion in May, when the parties asked the court to set it for hearing on May 18, 2018. On that morning, a court coordinator informed the court that the GOP's attorney called to say that he was injured and would be unable to appear for the hearing; no further communication occurred with the court on the motion to reconsider. The order further stated that the court had the opportunity to review the motion for reconsideration and that it was denied.

¶ 26　　Defendant Chicago Republican Party filed its notice of appeal on July 16, 2018.[2]

¶ 27　　　　　　　　　　　　　　II. ANALYSIS

¶ 28　　On appeal, defendant contends that the circuit court erred in granting judgment in favor of plaintiff because the judgment "simply defies the United States Constitution and United States Supreme Court precedent." Defendant notes that a strict scrutiny analysis applies to the State's intrusion on its first amendment rights through section 7-8 of the Code. Defendant argues that the purported compelling state interest found by the circuit court is barred by federal law, the right to vote does not create a compelling state interest to supersede defendant's bylaw provision, and application of section 25-6 of the Code (10 ILCS 5/25-6 (West 2016)) to strike the bylaw provision violates constitutional principles, thus making sections 25-6 and 7-8 of the Code unconstitutional. This case presents an issue of first impression for the court.

¶ 29　　　　　　　　　　　　　　A. Jurisdiction

¶ 30　　Before we address the merits of defendant's appeal, we must first determine whether we have jurisdiction. *Dus v. Provena St. Mary's Hospital*, 2012 IL App (3d) 091064, ¶ 9. The

---

[2]The Cook County Republican Party is not a party to the appeal.

timely filing of a notice of appeal is both mandatory and jurisdictional. *Id.* ¶ 10. Accordingly, our supreme court requires strict compliance with its rules governing the time limits for filing a notice of appeal, and neither a circuit court nor an appellate court has the authority to excuse compliance with the filing requirements mandated by those rules. *Id.*

¶ 31        Rule 303 mandates that a notice of appeal must be filed within 30 days of a final order, unless a "timely posttrial motion directed against the judgment is filed." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). The notice of appeal is then due within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order. *Id.*

¶ 32        In this case, the circuit court entered a declaratory judgment in favor of plaintiff on March 16, 2018. Defendant filed a timely motion to reconsider on April 13, 2018, which was denied on June 15, 2018. Thus, defendant's notice of appeal was due on July 15, 2018. Defendant's notice of appeal, which is dated July 13, 2018, was date stamped by the circuit court's electronic filing system as being filed on July 16, 2018. Defendant has noted in its brief that it initially filed a notice of appeal on July 13, 2018, but due to "Clerk error" the notice was improperly rejected and refiled on July 16, 2018. Defendant has also included a footnote indicating that its notice of appeal was the first notice of appeal filed online for the county division of the circuit court on its new website.

¶ 33        We note that as July 15, 2018, fell on a Sunday, defendant's notice of appeal was due the next business day, July 16, the date that it was date stamped by the electronic filing system. See *Pro Sapiens, LLC v. Indeck Power Equipment Co.*, 2019 IL App (1st) 182019, ¶ 58. Accordingly, this appeal is timely, and we thus turn to the merits.

¶ 34                                    B. Standard of Review

¶ 35        Defendant contends that the standard of review is *de novo* as this is an appeal from a grant of summary judgment, citing *Seymour v. Collins*, 2015 IL 118432, ¶ 42. However, we note, contrary to defendant's assertion on appeal, the circuit court entered a declaratory judgment in favor of plaintiff and subsequently denied defendant's motion to reconsider.

¶ 36        When reviewing a motion to reconsider based on the circuit court's purported misapplication of existing law, the standard of review is *de novo*; by contrast, where the motion to reconsider is based on new evidence, facts, or legal theories not presented in the prior proceedings, our standard of review is abuse of discretion. *Horlacher v. Cohen*, 2017 IL App (1st) 162712, ¶ 80. Here, we will apply *de novo* review as the motion to reconsider was based on the misapplication of existing law.

¶ 37                                         C. Discussion

¶ 38        We now turn to the merits of this appeal for consideration under Illinois law—namely, whether the circuit court properly denied defendant's motion to reconsider that the bylaw change, enacted after voting started in the 2016 Illinois primary election, violated the fundamental right to vote.

¶ 39        It is necessary to note at the outset that defendant has failed to provide any transcripts from any of the proceedings below, so we do not know the arguments the parties made to the circuit court or the circuit court's reasoning in granting judgment in favor of plaintiff, besides that written in its order. It is the duty of every appellant in a reviewing court to provide a sufficient record to support a claim of error. In the absence of such a record, the reviewing court will

- 6 -

presume that the trial court's order was in conformity with established legal principles and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984); *US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 16. In the absence of a proper record, a reviewing court may dismiss the appeal or, alternately, summarily affirm the judgment of the trial court. *Marx Transport, Inc. v. Air Express International Corp.*, 379 Ill. App. 3d 849, 853 (2008). However, the failure to present a report of proceedings does not require automatic dismissal or affirmance where the issues can be resolved on the record as it stands. *Id.*

¶ 40                                    1. Federal Litigation

¶ 41     On appeal, defendant renews its argument that the state-created interests in the Code cannot prevail over its first amendment right of association. As noted previously, defendant cited *Cook County Republican Party*, 207 F. Supp. 3d 841, in support of its contention that the bylaw should be upheld over the Code's provisions and that strict scrutiny should apply to the challenged bylaw provision.

¶ 42     In that case, the city and county Republican parties (the defendants in this case at the trial court level) filed a section 1983 (42 U.S.C. § 1983 (2012)) action against the city election board and former ward committeemen, alleging that the city election board proceeding concerning whether to exclude the parties' candidate from Congress from the election ballot violated their first amendment (U.S. Const., amend. I) right to freedom of association and their fourteenth amendment (U.S. Const., amend. XIV) right to due process. *Cook County Republican Party*, 207 F. Supp. 3d at 842. The case concerned the same bylaw provision at issue in this case, with the district court noting that the Republicans enacted it out of concern that the party was being infiltrated by "carpetbagging" candidates for ward committeemen posts who were in fact Democratic operatives. *Id.* at 843.

¶ 43     Just as in the case at bar, Frances Sapone and Sammy Tenuta ran unopposed for election in the March 2016 primary as the Republican 29th and 36th ward committeemen, respectively, and they received the most votes in their wards. *Id.* Because both Sapone and Tenuta had voted in the Democratic Party primaries within the previous eight years, the Republicans declared the committeemen offices vacant pursuant to the new bylaw. *Id.* During the same primary election, no Republican candidate appeared on the ballot for the office of United States Representative for the 7th Congressional District. *Id.* In order to fill the vacancy, the Code requires, among other things, that the political party involved must hold a meeting to nominate a candidate. *Id.* On April 13, 2016, Republican ward committeemen from election precincts within that congressional district held a nominating meeting at which they selected Jeffery Leef as their nominee for Congress. *Id.* at 843-44. Although the 29th and 36th wards were included within the 7th Congressional District, the Republicans did not notify Sapone and Tenuta of the meeting because of the bylaw declaration that they were not valid committeemen. *Id.* at 844. Sapone filed an objection to Leef's nomination because she and Tenuta were entitled to notice of the nominating meeting. *Id.* The hearing on that objection resulted in a recommendation that Leef be excluded from the ballot, and the Republicans filed the case in the United States District Court, which entered a temporary restraining order against the election board. *Id.*

¶ 44     In examining the merits of the Republicans' claims, the district court noted that it was well settled that the first amendment's freedom of association guarantee protects the rights of political parties to select their leaders freely. *Id.* at 844-45. Because of that, courts "carefully

constrain governmental interference with a party's business of choosing its members and leaders. Any such 'heav[y] burden on a political party's associational freedom' is 'unconstitutional unless it is narrowly tailored to serve a compelling state interest.' " *Id.* at 845 (quoting *California Democratic Party v. Jones*, 530 U.S. 567, 582 (2000)).

¶ 45   The district court, in rendering its decision, noted that the compelling state interests advanced by Sapone and Tenuta—namely, the recommendation of election judges and the authority to fill vacancies in the General Assembly by appointment—involved functions and duties that were only peripheral to the party's essential inner workings. *Id.* at 847-48. The court further found that with respect to the matters at issue in the case, particularly the qualifications that the parties set for internal leadership and the way parties select their nominees, the first amendment overrides any potential state interference. *Id.* at 848. With respect to Sapone and Tenuta, the district court concluded that they were not the Republican ward committeemen by virtue of their disqualification for office under the bylaw provision and that "to apply Illinois law to invalidate the Section 3 bylaw, which would in turn retain for Sapone and Tenuta their invalidly-obtained positions as ward committeemen, would violate the first amendment's freedom of association clause." *Id.* at 850. Summary judgment was granted in favor of the Republicans on all claims. *Id.*

¶ 46   However, that was not the end of the litigation. Sapone and Tenuta appealed to the United States Court of Appeals, which vacated the previous 2016 decision and remanded the matter. *Cook County Republican Party v. Sapone*, 870 F.3d 709 (7th Cir. 2017). The Seventh Circuit determined that there was no original federal jurisdiction over the dispute because it concerned only state law and was not a case or controversy under article III of the United States Constitution (U.S. Const., art. III). *Cook County Republican Party*, 870 F.3d at 711. The court concluded that the district court should not have adjudicated the dispute between the Republican party and Sapone and Tenuta and vacated the declaratory judgment. *Id.* at 712. The court also noted that neither Sapone nor Tenuta questioned the timing of the bylaw revision. *Id.* at 710. The case was then remanded to the district court for dismissal based on the lack of subject matter jurisdiction. *Id.* Thus, the case relied on by defendant to support its position is unpersuasive because it was vacated by a higher court.

¶ 47                              2. Plaintiff's Declaratory Judgment Action

¶ 48   Turning to the dispute at issue in this case, plaintiff's declaratory judgment action challenged the timing of defendant's bylaw provision enacted during the voting period for the March 2016 primary that served to disqualify him as a candidate. Plaintiff did not dispute whether defendant could enact such provision, only that the bylaw enacted and applied during the primary election was a violation of the Code and the right to vote. Similarly, defendant does not dispute that it enacted the bylaw provision or its application. We note that defendant initially argued before the circuit court that the bylaw provision was enacted prior to the early voting period for the March 2016 primary, but the court rejected that argument because it was disputed by the record. The circuit court, which never stated that defendant could not enact such a bylaw provision, found however, that its enactment during an ongoing election and its purported enforcement after voting in the election had concluded, violated the fundamental right to vote.

¶ 49   In this appeal, defendant appears to argue that any restriction upon its right to freely associate for political purposes violates its constitutional rights and must be subject to strict

scrutiny. Further, defendant contends that the specific grant of rights under the first amendment predominates over the general state interest in regulating elections for public office, and the right to vote as asserted below does not create a compelling state interest to supersede the bylaw. Defendant also asserts that application of section 7-8 of the Code to override the revised bylaw is a burden on its first amendment rights of free speech and free association.

¶ 50    We again note that this appeal is before us on the denial of defendant's motion to reconsider the grant of declaratory judgment in favor of plaintiff. The circuit court found that the timing of defendant's bylaw change during an election and the removal of plaintiff from the committeeman position after the election was over served to nullify the fundamental voting rights of the ward residents who voted for plaintiff in the March 2016 primary election. Thus, the issue before us is not whether certain sections of the Code violate defendant's right to freedom of association. Rather, the issue is whether defendant's exercise of its fundamental right to freedom of association in enacting the bylaw change during an ongoing election impermissibly burdened the ward residents' fundamental right to vote.

¶ 51    While there is no case that addresses this precise issue, we find our supreme court's analysis in *Tully*, 171 Ill. 2d 297, to be instructive. In *Tully*, a class action was brought challenging the constitutionality of a provision curtailing the term of existing elected trustees of the University of Illinois and effectively removing them from office. *Id.* at 299. The provision was contained in a statute that changed the board of trustees from an elective to an appointed office. *Id.* at 300. Plaintiffs Tully and Calder conceded that the General Assembly had the power to change the office of trustee from elective to an appointed office. *Id.* at 303-04. However, they argued that in exercising such power, the General Assembly could not "transgress constitutional limitations" and claimed that the legislature ran afoul of various provisions of the United States and Illinois Constitutions when it provided for the removal, without cause, of the nine elected trustees from office before the expiration of their six-year terms. *Id.* at 304. In essence, there was a timing issue of when such change could be made, much like the one we are facing in the case at bar.

¶ 52    Tully argued that the statute violated his right of suffrage and the right of those similarly situated, in violation of the state constitution. *Id.* at 304. Tully contended that the statute implicated the right of suffrage because it nullified the result of a valid election and effectively removed the trustees whom the citizens elected to serve. *Id.* at 305. Further, legislation that eliminated the right of the elected official to serve, while retaining the office to which the representatives were elected, implicated the right to vote guaranteed in the state constitution. *Id.* Tully also claimed that the statute injured his voting right by removing, without cause, the trustees as to whom his voting right was exercised, and that because the right to vote was a fundamental constitutional right, the statute may be upheld only if it withstood a strict scrutiny analysis. *Id.* Our supreme court agreed that the right to vote is constitutionally protected in Illinois and applied a strict scrutiny analysis. *Id.* at 306.

¶ 53    Our supreme court found that its prior cases supported the view that legislation affecting any stage of the election process implicates the right to vote. *Id.* at 307. For example, the right to vote is implicated by legislation that restricts a candidate's effort to gain access to the ballot. *Anderson v. Schneider*, 67 Ill. 2d 165, 172-73 (1977). Further, the right to vote is implicated by legislation that limits the people's right to nominate candidates (*People v. Fox*, 294 Ill. 263 (1920)) and that prohibits the counting of legally cast ballots (*Craig v. Peterson*, 39 Ill. 2d 191 (1968)). In *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54 (1990), the court held that

the constitutional right to vote was implicated by legislation that gave some votes cast greater or lesser weight than others. *Tully*, 171 Ill. 2d at 307.

¶ 54 In reviewing the statute at issue, our supreme court found that the challenged legislation did not simply give the votes cast by some citizens less effect than others; instead, it "establishe[d] a mechanism for *total* disregard of *all* votes cast by citizens in a particular election." (Emphases in original.) *Id.* The court determined that the vote cast by a citizen was not simply diluted, but was totally nullified by the legislative scheme, which did not simply "impair" the vote, but rather obliterated its effect and voided the votes cast by citizens in a valid election. *Id.* The court concluded that the integrity of the vote was undermined and destroyed by the legislative scheme. *Id.* Under the strict scrutiny analysis, the court considered three questions: (1) Did the statute advance a compelling state interest? (2) Was the provision nullifying the votes cast in the election and removing the elected from office necessary to achieve the legislation's asserted goal? and (3) Were the provisions in the legislation the least restrictive means available to attain the legislation's goal? *Id.* at 311.

¶ 55 The court found that even if the legislation could be construed as advancing the State's compelling interest of education, the legislation was not necessary as there was no assertion that the currently elected trustees were incompetent, nor was there any assertion that their immediate removal was necessary to improve the equality of education at the university. *Id.* at 311-12. Further, the court found that it was evident that the legislature's goal could have been achieved by other means that would not impinge upon the fundamental right to vote, such as upon the expiration the terms of office of the currently elected trustees, successor trustees would be appointed rather than elected. *Id.* at 312. Accordingly, the court concluded that the section of the statute that provided for the removal of the elected trustees midterm was not necessary to achieve the legislature's presumed goal, it was not the least restrictive means of achieving that presumed goal, it did not meet strict scrutiny, and it violated the right to vote under the state constitution. *Id.*

¶ 56 Here, we are faced with a similar concern, namely, whether defendant's bylaw change and its timing violated the fundamental right to vote, as well as plaintiff's right to a place on the ballot. Accordingly, we will apply strict scrutiny to review the bylaw provision. *Puffer-Hefty School District No. 69 v. Du Page Regional Board of School Trustees*, 339 Ill. App. 3d 194, 202 (2003).

¶ 57 As we have previously noted, the record below indicated that, based on perceived infiltration of the Republican Party by Democratic Party operatives, the bylaws of the Cook County Republican Party were amended on March 9, 2016, to include the following section:

"SECTION 3: A vacancy shall exist in the office of Republican Committeeman in any ward or township in which an elected or appointed committeeman votes, or has voted, in the primary for another political party in the previous eight years."

The record further indicates that early voting for the March 2016 primary began on February 4, 2016. After the election was complete and plaintiff had won the majority of the votes cast for the vacant Republican committeeman position, defendant informed him of the revised bylaw provision and indicated that the office was still vacant under the revised bylaw. Thus, like the circumstances presented in *Tully*, the bylaw effectively nullified the results of a valid election.

¶ 58 Under strict scrutiny, we must consider three questions: (1) Does the bylaw advance a compelling or fundamental interest? (2) Is the provision that nullifies the votes cast in the

election and removes the elected committeeman from office necessary to achieve defendant's asserted goal? and (3) Are the provisions of the bylaw the least restrictive means available to attain the goal. *Tully*, 171 Ill. 2d at 311.

¶ 59 We are faced with two distinct and fundamental rights: the right of individuals to associate for the advancement of political beliefs and the right of qualified voters, regardless of their political persuasion to cast their votes effectively. *Ghiles v. Municipal Officers Electoral Board*, 2019 IL App (1st) 190117, ¶ 17. The right of qualified voters to vote and the right of citizens to associate for political purposes are considered among the more fundamental constitutionally protected rights; however, those rights are not absolute. *Druck v. Illinois State Board of Elections*, 387 Ill. App. 3d 144, 151 (2008). States may impose reasonable restrictions upon political parties because states have an interest in requiring a demonstration of qualification for the elections to run fairly and effectively. *Id.* This is not only a State's right, it is a duty. *Id.* (citing *Storer v. Brown*, 415 U.S. 724, 729 (1974)).

¶ 60 Here, the proffered reason by the GOP for the bylaw change is to protect its fundamental right to freedom of association for political purposes by curbing the infiltration of Democrats into the GOP. Because the right to freely associate for political purposes is a fundamental right, we find that defendant has advanced a compelling interest to be served by the revised bylaw provision. Thus, defendant has satisfied the first prong of strict scrutiny analysis. Next, we must determine whether the bylaw provision was necessary and narrowly tailored to attain defendant's goal. We find that it was not, as defendant's right to freedom of association is not absolute. *Druck*, 387 Ill. App. 3d at 151.

¶ 61 First, while we agree with defendant that it had the right to determine the qualifications for a committeeman from its party (in tandem with the provision of the Code related to party-switching (10 ILCS 5/8-8 (West 2018))), we find that such bylaw provision, enacted during a primary election and serving to remove a validly elected committeeman from office at the conclusion of the election, was not necessary or narrowly tailored, much like the legislation at issue in *Tully*. There were other means for the GOP to accomplish its goal—namely, that the bylaw revision could have taken place prior to the voting for the primary or it could have been put into effect for the next election. As such, we conclude that the GOP's bylaw revision does not meet the strict scrutiny standard and violates the right to vote guaranteed under the constitution. *Tully*, 171 Ill. 2d at 312.

¶ 62 Defendant argues, however, that sections 7-8 and 25-6 of the Code do not apply or are unconstitutional as applied because a vote cast for a committeeman is not a vote cast for a public official. This argument is similar to that made by the defendants in *Tully*, which our supreme court rejected, noting that a citizen's right to equal voting participation was impaired just as much when he votes for a local school board official as when he votes for a state legislator, despite the differences in the powers. *Id.* at 309 (citing *Fumarolo*, 142 Ill. 2d at 76). The court concluded that university trustees perform important government functions that were at the heart of a traditional and vital government function—namely, the operation of public education. *Id.* at 310. The court further found that the trustees, whose election the State opened to all qualified voters, were government officials in every relevant sense of the term. *Id.*

¶ 63 The same conclusion is warranted here. The position at issue, ward committeeman, is a creation of statute much like that of university trustee; the ward committeeman position is created by section 7-8 of the Code. Precinct, township, ward, and State central committeemen are elected in primary elections, as well as delegates to national nominating conventions.

- 11 -

*Pullen v. Mulligan*, 138 Ill. 2d 21, 34 (1990). Section 7-8(b) of the Code provides that each primary elector may vote for one candidate of his party in his ward for ward committeeperson, that each candidate for ward committeeperson must be a resident of and in the ward where he seeks to be elected, that the one having the highest number of votes shall be such ward committeeperson of such party for such ward, and the official returns of the primary shall show the name of the committeeperson of each political party. 10 ILCS 5/7-8(b) (West 2016).

¶ 64     Additionally, section 25-6 of the Code concerns one of the important functions of a committeeman, voting for vacancies in the General Assembly. Section 25-6(a) provides that when a vacancy occurs in either office, the vacancy shall be filled within 30 days by appointment of the legislative or representative committee of that legislative or representative district of the political party of which the incumbent was a candidate at the time of his election. 10 ILCS 5/25-6(a) (West 2018). Additionally, section 25-6(d) provides that, in making such appointments, each committeeman of the appropriate legislative or representative committee shall be entitled to one vote for each vote that was received. 10 ILCS 5/25-6(d) (West 2018).

¶ 65     Similarly, section 7-61 of the Code (10 ILCS 5/7-61 (West 2018)) requires political parties to hold a meeting to nominate congressional candidates when there is no candidate on the ballot. This meeting includes committeemen from the district affected.

¶ 66     It is clear then that ward committeemen have some characteristics of public officials, in that the Code provides for their election by qualified voters and gives them duties related to filling vacancies in the General Assembly and nominations for congressional ballots. Defendant's argument concerning the constitutionality or applicability of the Code to ward committeemen is without merit.

¶ 67     In sum, citizens' fundamental right to vote and the votes cast for committeemen are constitutionally protected. We conclude that the GOP's attempt to nullify the election for ward committeeman through its bylaw revision during an ongoing primary election, while it implicated its fundamental right to freedom of association for political purpose, impermissibly and unconstitutionally burdened the citizens' fundamental right to vote.

¶ 68     Accordingly, we find that the circuit court properly entered a declaratory judgment in favor of plaintiff.

¶ 69                               III. CONCLUSION
¶ 70     For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 71     Affirmed.


¶ 72     JUSTICE DELORT, specially concurring:
¶ 73     I concur with the result reached by the majority but do not join its opinion in full. I believe that our analysis should not rest on the narrow grounds relied on by the majority. The circuit court, and the majority, determined that the timing of the bylaw enactment was pivotal, finding that the Cook County Republican Party enacted its bylaw too late in the game to be effective. But Graves's complaint does not rest merely on the premise that the bylaw was enacted too late. The key paragraph in the complaint alleges that there is nothing "in the [Election] Code that allows the Defendants to subsequently prevent Plaintiff from fulfilling his official duties

- 12 -

as the lawfully elected Republican Committeeman for the 19th Ward of Chicago." Therefore, the claim before us squarely presents the question of whether the Cook County Republican Party committee, the Chicago Republican Party committee, or any particular aggregation of Republican Party operatives can remove the duly elected ward committeeman at *any time* merely because they—in their opinion—find him to be insufficiently loyal to Republican party principles.

¶ 74　　I depart from the majority's reliance on cases such as *Tully v. Edgar* and the majority's use of the strict scrutiny test to determine the validity of the party bylaw. *Tully* concerned a *state law* that removed persons from office midterm, so using the familiar constitutional framework under which courts review statutes for constitutionality was appropriate. In this case, however, no state law is being directly challenged. Rather, the plaintiff here challenges a private entity's ability to remove him from a statutory office during the middle of his term.

¶ 75　　In *Kluk v. Lang*, 125 Ill. 2d 306, 331 (1988), our supreme court explained that party committeemen are essentially private, not public, officials. They do not earn a public salary, take an oath of office, or post a bond to ensure faithful service. However, state law provides for their election by the voters and grants them critical public functions, such as filling vacancies in the General Assembly. 10 ILCS 5/25-6 (West 2018). The *Kluk* court upheld this grant of authority, stating:

> "And though political party committees may be private entities in many contexts, the extensive responsibility given them by the Election Code in connection with appointments to legislative vacancies, pursuant to a constitutional mandate to preserve the political party affiliation of the former incumbent as to the successor legislator, takes them at least as far from private status in that context as was the Veterans Assistance Commission that recommended allocation of county funds in *Makowicz*. It remains only for them to carry out their responsibility in scrupulous compliance with the statute." *Kluk*, 125 Ill. 2d at 331.

¶ 76　　In a similar manner, state law provides an elaborately detailed process through which committeemen fill vacancies on the ballot. 10 ILCS 5/7-7, 7-8 (West 2018). It was that vacancy-filling process that precipitated the federal *Cook County Republican Party* litigation, which was the predecessor to this state court case.

¶ 77　　Party committeemen are elected by voters who choose to vote in a primary election and publicly declare themselves as affiliated with their party. 10 ILCS 5/7-44 (West 2018) (requiring that voters at a primary state their party affiliation to the precinct election judges and further requiring the election judges to repeat that information "in a distinct tone of voice, sufficiently loud to be heard by all persons in the polling place"); 10 ILCS 5/17-58 (West 2018) (providing that election officials proclaim as elected the committeemen candidates with the highest number of votes). Voters are permitted to change their party affiliation from election to election. 10 ILCS 5/7-10, 8-8 (West 2018); see also *Hossfeld v. Illinois State Board of Elections*, 238 Ill. 2d 418, 428 (2010) (allowing a candidate to run as a Republican, even though he voted in the Democratic primary of the next preceding local election). Nothing in the Election Code allows a political party itself to *ever* exercise a veto power over the candidate selected by the party's own voters. The veto power does not suddenly come into existence because enough time has passed that candidates are on "fair notice" of newly enacted party rules.

¶ 78     Under Illinois law, the committeeman of the 19th ward of Chicago is a member of many party committees: a county central committee, a City of Chicago municipal central committee, congressional district committees, legislative district committees, representative district committees, and subcircuit committees, to name a few. See 10 ILCS 5/7-8 (West 2018). There is also a Republican State Central Committee. 10 ILCS 5/7-7 (West 2018). What if the members of one of those statutory committees decide that elected committeemen who voted in another party's primary in the last six years are ineligible to serve as committeemen, but another statutory committee, controlled by a different party faction, declines to follow that lead? Allowing party committees to exercise veto power over the voters could lead to an absurd result where a committeeman would serve on some statutory committees, but not others. Nothing in state law grants the county committee, as opposed to any one of the other committees, some sort of veto power over the voters. The solution is simple: the voters are the gatekeepers, and their choice should prevail.

¶ 79     This result is perfectly consistent with the associational rights that concerned the *Cook County Republican Party* court. Any group of Republican party adherents, elected or not, is free to form nonstatutory committees—for instance, the "Southwest Side Bungalow Belt" committee—to support candidates of their choice, formulate campaign strategy, and exercise the full panoply of their first amendment rights. Seventy-nine of the 80 elected committeemen in Cook County can declare the remaining committeeman to be a pariah and exclude her from parties, events, mailing lists, literature distribution, and the like. What they cannot do, however, is exclude her from the rights and functions that Illinois law bestows on her by virtue of her election by the voters.

¶ 80     For these reasons, I would affirm the judgment below on the basis that the Cook County and Chicago committees had no authority to ever remove the plaintiff, a duly elected committeeman, from office or to deprive him of his statutory rights.