**2022 IL 127258**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

———————————

(Docket No. 127258)

McHENRY TOWNSHIP, Appellee, v. THE COUNTY OF
McHENRY *et al.*, Appellants.

*Opinion filed March 24, 2022.*

JUSTICE MICHAEL J. BURKE delivered the judgment of the court, with
opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, Neville, Overstreet,
and Carter concurred in the judgment and opinion.

## OPINION

¶ 1     In the March 2020 primary election, the voters in McHenry Township
(township) rejected a proposition to dissolve the township. A few months later, the
township's board of trustees adopted a resolution to place a nearly identical
proposition on the November 2020 general election ballot.

¶ 2        The township submitted the proposition to defendant Joseph Tirio, the clerk of defendant McHenry County, to place the proposition on the ballot. Tirio refused to do so, notifying the township that the proposition violated the statutory prohibition against "the same proposition" appearing on the ballot more than once within 23 months. 10 ILCS 5/28-7 (West 2020).

¶ 3        The township filed a complaint for a writ of *mandamus* or mandatory injunctive relief to compel defendants to place the referendum proposition on the November 2020 ballot. The circuit court, citing the March 2020 ballot, dismissed the complaint with prejudice. 735 ILCS 5/2-619(a)(9) (West 2018). The appellate court reversed the dismissal, holding that, regardless of whether the proposition was prohibited from appearing on the November 2020 ballot, Tirio lacked the statutory authority to make that determination and was obligated to perform the ministerial act of placing the proposition on the ballot. 2021 IL App (2d) 200478, ¶¶ 48, 52.

¶ 4        Defendants argue on appeal that the Election Code and the Township Code authorized Tirio to determine whether the challenged proposition violated the general election law, including the 23-month ballot limitation, even though the violation was not apparent from the face of the township's submission. Defendants further contend that, although the two propositions contained different effective dates, the challenged proposition could not appear on the ballot because it was "the same proposition" that had appeared on the March 2020 ballot less than 23 months earlier.

¶ 5        The township no longer wishes to pursue dissolution, so the parties' positions are aligned against the result reached by the appellate court. However, for the following reasons, we affirm the appellate court's judgment and reverse the circuit court's judgment.

¶ 6                                                    I. BACKGROUND

¶ 7        The Illinois Constitution states that the legislature "shall provide by law for the formation of townships in any county when approved by county-wide referendum. Townships may be *** dissolved *** when approved by referendum in each township affected." Ill. Const. 1970, art. VII, § 5. Proposals for the dissolution of a township "may be initiated and submitted to the electors by resolution of the

- 2 -

governing board of a unit of local government or by petition of electors in the manner provided by law."[1] *Id.* § 11(a).

¶ 8                                  A. Statutory Framework

¶ 9                              1. Article 24 of the Township Code

¶ 10        In August 2019, to further the public policy goal of reducing the overall number of local governmental units in the state, the General Assembly enacted article 24 of the Township Code, which provides for the dissolution of townships in McHenry County. Pub. Act 101-230 (eff. Aug. 9, 2019) (adding 60 ILCS 1/art. 24). Article 24 facilitates dissolution by means of referenda, which may be proposed by a township's board adopting an initiating resolution (60 ILCS 1/24-15 (West 2020)) or by its electors circulating petitions (*id.* § 24-20).

¶ 11        Relevant to this case, section 24-15 authorizes the board of trustees of any McHenry County township to adopt a resolution to "submit a proposition to dissolve the township to the electors of that township at the election next following in accordance with the general election law. The ballot shall be as provided for in Section 24-30." *Id.* § 24-15. Section 24-30(a) requires the ballot to "be in substantially the following form":

>       "Shall the (dissolving township), together with any road districts wholly within the boundaries of (dissolving township), be dissolved on (date of dissolution) with all of the township and road district property, assets, personnel, obligations, and liabilities being transferred to McHenry County?

>       YES

>       NO" *Id.* § 24-30(a).

¶ 12        The effective date of dissolution is dictated by the election date. "The proposed date of dissolution shall be at least 90 days after the date of the election at which

---

[1]For purposes of this appeal, " 'electors' means the registered voters of any single township in McHenry County.' " 60 ILCS 1/24-10 (West 2020).

the referendum is to be voted upon." *Id.* § 24-20(b).

¶ 13                                    2. Article 28 of the Election Code

¶ 14        A referendum proposition to dissolve a township in McHenry County is a "public question" as defined by the Election Code. 10 ILCS 5/1-3(15) (West 2018) (a " 'public question' means any question, proposition or measure submitted to the voters at an election dealing with subject matter other than the nomination or election of candidates and shall include, but is not limited to, any bond or tax referendum, and questions relating to the Constitution").

¶ 15        The submission of public questions to referenda is governed by article 28 of the Election Code. *Id.* art. 28. Public questions may be placed on the ballot when initiated by either (1) petitions signed by electors or (2) resolutions or ordinances of local governing boards of political subdivisions. See *id.* § 28-2(a), (c). This case involves a resolution adopted by the governing board of a township.

¶ 16        County clerks, like Tirio, are charged with printing ballots. *Id.* § 16-5 ("the county clerks, in their respective counties, shall have charge of the printing of ballots for all elections, including referenda"). Under certain circumstances as set forth in section 28-1 (*id.* § 28-1), section 28-5 (*id.* § 28-5) requires a county clerk to notify a township's board when a public question that was adopted by resolution may not be placed on the ballot:

> "Whenever a local election official, an election authority [*e.g.*, a county clerk (10 ILCS 5/1-3(8) (2018))], or the State Board of Elections is in receipt of an initiating petition, or a certification for the submission of a public question at an election at which *the public question may not be placed on the ballot or submitted because of the limitations of Section 28-1*, such officer or board shall give notice of such prohibition, by registered mail, as follows:

> ***

> (b) in the case of a certificate from a local election authority, to such local election authority, who shall thereupon give notice as provided in subparagraph (a), or *notify the governing board which adopted the initiating resolution* or ordinance[.]" (Emphases added.) *Id*.

- 4 -

¶ 17    The notification provision of section 28-5 is triggered when the public question may not be placed on the ballot or submitted because of "the limitations of Section 28-1." *Id.* Section 28-1 prescribes procedures for initiating, submitting, and printing public questions to referendum. *Id.* § 28-1. The section also limits the number of public questions that may be submitted to referendum and at which elections they may appear on the ballot. *Id.*

¶ 18    In addition to prescribing technical procedural limitations, section 28-1 broadly states "[t]he initiation and submission of all public questions to be voted upon by the electors of the State or of any political subdivision or district or precinct or combination of precincts shall be subject to the provisions of *this Article*." (Emphasis added.) *Id.*

¶ 19    Section 28-7, which is within article 28 but separate from section 28-1, contains the limitation at issue in this case: "[r]eferenda provided for in this Section may not be held more than once in any 23-month period on the same proposition." *Id.* § 28-7.

¶ 20    B. The Township Adopts Resolutions and Submits Propositions

¶ 21    As this appeal is from the involuntary dismissal of the complaint under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2018)), we set forth and accept as true the well-pleaded facts alleged in the complaint as well as all reasonable inferences that arise from them. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31.

¶ 22    The parties do not dispute that the referendum appearing on the March 2020 primary ballot complied with the Township Code and the Election Code. The proposition to dissolve the township asked

> "Shall the McHenry Township together with any road districts wholly within the boundaries of McHenry Township, be dissolved on June 21, 2020[,] with all of the township and road district property, assets, personnel, obligations, and liabilities being transferred to McHenry County?
>
> Yes

No"

¶ 23 The voters rejected the proposition.

¶ 24 On June 12, 2020, the township's board adopted a resolution to place another dissolution proposition on the November 2020 general election ballot. The proposition carried over the language from the March 2020 proposition but added conditions affecting the township's finances following dissolution. The limitations concerned the use of the township's funds, the use of proceeds from the sale of the township's property, and property tax levies. The proposed effective date of dissolution was February 8, 2021.

¶ 25 On June 29, 2020, the township submitted to Tirio's office the documents necessary for placing the proposition on the ballot, including (1) proof of filing a certification of the proposition to dissolve the township, (2) a certification of the board's resolution concerning the proposition, and (3) a certification of ballot. The next day, Tirio notified the township's board that the public question as submitted could not appear on the ballot. Tirio asserted that (1) the referendum was not in the proper form to appear on the ballot, as set forth in section 24-30 of the Township Code (60 ILCS 1/24-30 (West 2020)) and (2) the referendum was based on the same proposition as one that appeared on the March 2020 ballot, which violated the prohibition against more than one referendum on "the same proposition" in any 23-month period (10 ILCS 5/28-7 (West 2020)).

¶ 26 On July 6, 2020, the township's board adopted a revised resolution to bring the proposition into compliance with the form requirements of section 24-30(a) of the Township Code. The effective date of the proposition remained February 8, 2021. The township again certified the proposition by submitting to Tirio's office the documents needed to place the proposition on the ballot.

¶ 27 Except for the effective dates of dissolution, the March 2020 referendum and the proposition to be placed on the November 2020 general election ballot were identical.

¶ 28 On July 7, 2020, Tirio notified the township's board that he would not place the revised referendum proposition on the November 2020 general election ballot. Tirio explained that, despite the deletion of the nonconforming language, the

proposition still violated the prohibition against placing the same proposition on the ballot more than once within 23 months. Tirio concluded that the 23-month limitation of section 28-7 would be rendered "completely ineffective" if two otherwise identical propositions were considered not "the same" simply because their effective dates were different.

¶ 29                           C. Circuit Court Proceedings

¶ 30       On July 24, 2020, the township filed an action for a writ of *mandamus* or mandatory injunctive relief to compel defendants to place the referendum proposition on the November 2020 general election ballot.

¶ 31       The township argued (1) Tirio exceeded his authority as a ministerial officer by analyzing the content of the March 2020 and November 2020 propositions to determine their "sameness" and (2) even if Tirio was authorized to make the comparison, the two propositions were not "the same," because their effective dates were different. The township argued that Tirio lacked authority as county clerk to look beyond the face of the filings, effectively exercising judicial power to interpret a statute.

¶ 32       On August 5, 2020, defendants filed a combined motion to dismiss the complaint, arguing that the March 2020 dissolution proposition was affirmative matter defeating the *mandamus* claim because it showed the new proposition violated section 28-7. 735 ILCS 5/2-619(a)(9), 2-619.1 (West 2018). Defendants asserted the two propositions were "the same" under section 28-7 because the only difference was the effective dates, which were dictated by section 24-20(b) of the Township Code.

¶ 33       Defendants concluded that, because referendum propositions to restructure government entities are limited to ballot placement only once in a 23-month period, section 28-7 of the Election Code required Tirio to prohibit the proposition from being printed on the November 2020 general election ballot. Defendants argued that Tirio complied with section 28-5 of the Election Code by notifying the township clerk of the prohibition.

- 7 -

¶ 34        Defendants maintained that Tirio did not look beyond the face of the township's submission, because he is charged with knowledge of past ballot content. See 10 ILCS 5/16-5 (West 2018). Tirio had personal knowledge of the March 2020 ballot and knew the proposed November 2020 referendum had appeared a few months earlier.

¶ 35        Defendants asserted that Tirio, as the county clerk, must ensure that a proposition submitted through resolution is in the proper form because there is no statutory provision for voters to object to a proposition based on a resolution adopted by the township.

¶ 36        The township responded that Tirio lacked the authority to review the content of the proposition by looking beyond its four corners and comparing it to the March 2020 proposition. And even if Tirio had such power, the township asserted, the 23-month prohibition did not apply because the two propositions were not the same.

¶ 37        On August 24, 2020, the circuit court granted defendants' motion and dismissed the township's complaint, with prejudice, under section 2-619(a)(9) of the Code of Civil Procedure.

¶ 38        The court agreed with the township that the referendum proposition, on its face, met the statutory requirements and that Tirio needed to look outside the four corners of the filings to determine any infirmities. However, the court adopted defendants' remaining arguments, holding that the Election Code authorized Tirio to interpret section 28-7 and enforce it against the proposition. The court also concluded that the proposition was "the same" question that appeared on the March 2020 ballot, because their different effective dates were set by statute and could not be voted on by the public. The township appealed.

¶ 39                        D. Appellate Court Proceedings

¶ 40        The appellate court reversed the dismissal of the township's complaint. First, the appellate court held that the public interest exception to the mootness doctrine permitted review of the otherwise moot issue of placement of the proposition on the November 2020 ballot. 2021 IL App (2d) 200478, ¶ 27.

¶ 41    Second, the court held that the township demonstrated the elements of a *mandamus* action. Tirio's determination that the proposition was prohibited "necessarily required him to look beyond the face of the township's July 2020 filings." *Id.* ¶ 46. The court held that *People ex rel. Giese v. Dillon*, 266 Ill. 272, 275-76 (1914), makes clear that a ministerial officer such as Tirio may not look beyond the face of the filings to determine whether the proposition complies with the law. 2021 IL App (2d) 200478, ¶ 46. Tirio could not have known from the face of the township's submission that a proposition with identical language—except for the dissolution date—had been presented to the voters in March 2020. *Id.* The court also rejected defendants' argument that a clerk's notification of prohibition under section 28-5 was the only means of enforcing section 28-7, noting that a private citizen or Tirio, himself, could have pursued a judicial determination of the proposition's validity. *Id.* ¶ 49. The court did not reach the issue of whether the two propositions were "the same" under section 28-7 of the Election Code. *Id.* ¶ 50. The appellate court also did not order the proposition placed on the ballot for the next election but simply remanded the cause for "further proceedings" on the complaint. *Id.* ¶ 52.

¶ 42                          E. Supreme Court Proceedings

¶ 43    Defendants filed a petition for leave to appeal, which we allowed pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2020). The parties timely filed their briefs. But on December 21, 2021, the township filed an unopposed motion to withdraw its appellee's brief. The motion stated that the brief was not authorized by the township and that the township wishes to "dismiss [its] claims." This court allowed the township to withdraw its brief and heard one-sided oral argument by defendants.

¶ 44    At this point, the parties do not dispute whether Tirio was statutorily authorized to reject the proposition for violating section 28-7. The parties are aligned against the appellate court decision, but they have not taken any steps to resolve the litigation. Therefore, we address the arguments raised by defendants and decide the appeal.

¶ 45                                II. ANALYSIS

¶ 46    The issues presented on appeal are (1) whether the Election Code and the Township Code authorized Tirio to refuse to place the township's proposition on the November 2020 general election ballot for the reason given and (2) whether the township's two referenda propositions are "the same" for purposes of the 23-month ballot limitation in section 28-7 of the Election Code.

¶ 47                              A. *Talandis*

¶ 48    The township withdrew its appellee's brief, but the lack of a brief does not hinder our review because the points made in opposition to defendants' position are stated in the appellate court opinion. In the absence of an appellee's brief, a reviewing court should address an appeal on the merits where the record is simple and the claimed errors are such that the court may easily decide the issues raised by the appellant. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). We choose to address the merits of this appeal under *Talandis*. See *In re Marriage of Earlywine*, 2013 IL 114779, ¶ 13.

¶ 49                              B. Mootness

¶ 50    The issues raised by defendants are moot, given that the November 2020 election has passed. *In re Shelby R.*, 2013 IL 114994, ¶ 15 ("An appeal is moot if no controversy exists or if events have occurred which foreclose the reviewing court from granting effectual relief to the complaining party."). Courts generally do not decide moot questions (*id.*), but an exception to the mootness doctrine allows a court to resolve an otherwise moot issue if it involves a substantial public interest. The criteria for the public interest exception are: (1) the public nature of the question, (2) the desirability of an authoritative determination for the purpose of guiding public officers, and (3) the likelihood that the question will recur. *In re A Minor*, 127 Ill. 2d 247, 257 (1989). A clear showing of each criterion is required to bring a case within the public interest exception. *Wisnasky-Bettorf v. Pierce*, 2012 IL 111253, ¶ 12. The public interest exception is narrowly construed, but it applies where the court's action is warranted due to the magnitude or immediacy of the interests at issue. *Shelby R.*, 2013 IL 114994, ¶ 16. Application of the exception is warranted here.

¶ 51    First, a question of election law is inherently a matter of public concern. *Goodman v. Ward*, 241 Ill. 2d 398, 404 (2011). This appeal turns on whether section 28-5 authorizes a county clerk to reject a public question based on a violation of section 28-7 of the Election Code, when the violation is only apparent from a comparison to an earlier ballot and the only difference between the two public questions is the dissolution date prescribed by statute. A county clerk's discretion to look outside the four corners of a proposition to make this determination is a matter of public concern.

¶ 52    Second, the appeal involves interpreting article 28 of the Election Code, which governs the submission of public questions to voters, and article 24 of the Township Code, which allows for the dissolution of townships in McHenry County. As the appellate court observed, ruling on these issues "will aid local election officials and lower courts in deciding the nature of a county clerk's duties under section 28-5 of the Election Code and township dissolution issues in McHenry County, thereby, 'avoiding *** uncertainty in the electoral process.' " 2021 IL App (2d) 200478, ¶ 27 (quoting *Goodman*, 241 Ill. 2d at 405).

¶ 53    Third, the question might recur, despite the township's recent decision to abandon its action for *mandamus* relief in this case. Perhaps a future election will alter the board's membership, prompting a renewed attempt for dissolution. The two attempts to dissolve the township within one year of the enactment of article 24 of the Township Code indicate the likelihood this issue will recur.

¶ 54                                   C. Statutory Interpretation

¶ 55    This appeal is a matter of statutory interpretation, which is guided by familiar, well-established principles. Our primary goal is to ascertain the legislature's intent. *Tillman v. Pritzker*, 2021 IL 126387, ¶ 17. The best indicator of legislative intent is the language of the statute, given its plain, ordinary meaning. *Id.* If the language is clear and unambiguous, it should be given effect as written without resort to other aids of statutory interpretation. *Id.* Issues of statutory interpretation are questions of law, subject to *de novo* review. *Id.*

¶ 56                              D. Motion to Dismiss

¶ 57          Defendants seek dismissal of the complaint under section 2-619(a)(9) of the
        Code of Civil Procedure, which permits dismissal where "the claim asserted *** is
        barred by other affirmative matter avoiding the legal effect of or defeating the
        claim." 735 ILCS 5/2-619(a)(9) (West 2018). When we review a dismissal under
        section 2-619, we accept as true all well-pleaded facts as well as all reasonable
        inferences that arise from them. *Patrick Engineering*, 2012 IL 113148, ¶ 31.
        However, we will disregard all legal and factual conclusions in the complaint that
        are not supported by specific factual allegations. *Id.* We review *de novo* the circuit
        court's dismissal of the township's complaint and consider whether dismissal was
        proper as a matter of law. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156
        Ill. 2d 112, 116-17 (1993).


¶ 58                                  E. *Mandamus*

¶ 59          "*Mandamus* is an extraordinary remedy to enforce, as a matter of right, 'the
        performance of official duties by a public officer where no exercise of discretion
        on his part is involved.' [Citation.]" *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 229
        (1999). "[A] writ of *mandamus* will be awarded only if a plaintiff establishes a clear
        right to relief, a clear duty of the public official to act, and a clear authority in the
        public official to comply with the writ." *People ex rel. Madigan v. Snyder*, 208 Ill.
        2d 457, 465 (2004). There also must be no other adequate remedy. *Id. Mandamus*
        is improper if it substitutes the court's discretion or judgment for that of the official.
        *Cordrey v. Prisoner Review Board*, 2014 IL 117155, ¶ 18; *McFatridge v. Madigan*,
        2013 IL 113676, ¶ 17 ("A writ of *mandamus* is appropriate when used to compel
        compliance with mandatory legal standards but not when the act in question
        involves the exercise of a public officer's discretion.").


¶ 60                                  F. Section 28-5

¶ 61          Defendants moved for dismissal under section 2-619.1 of the Code of Civil
        Procedure, which permits a combined motion on the pleadings under section 2-615
        and a motion for involuntary dismissal under section 2-619. 735 ILCS 5/2-619.1
        (West 2018). Defendants' argument for dismissal under section 2-615 was based

on an undeveloped, conclusory statement that the complaint failed to state a claim. A court of review is entitled to have the issues clearly defined with relevant authority cited and cohesive arguments presented. *In re M.M.*, 2016 IL 119932, ¶ 30. Because this court will consider only issues that have been fully briefed and argued, we decline to consider whether section 2-615 is a valid basis for dismissal. See Ill. S. Ct. R. 341(h)(7), (i) (eff. May 25, 2018).

¶ 62 Defendants focus instead on the March 2020 ballot, asserting it was affirmative matter defeating the claim under section 2-619(a)(9) because the ballot indicated the November 2020 proposition violated section 28-7 of the Election Code. Defendants renew their argument that section 28-5 authorized Tirio to refer to the March 2020 ballot to determine the viability of the challenged proposition and was required to advise the township that the proposition was prohibited. Defendants assert that, when Tirio rejected the November 2020 dissolution proposition, he was serving in the role of "gatekeeper" by simply enforcing section 28-7. Defendants' position has superficial appeal but lacks a statutory basis.

¶ 63 The threshold issue is not whether the dissolution proposition was made "in accordance with the general election law" (60 ILCS 1/24-15 (West 2020)) or prohibited by the 23-month limitation against the same proposition appearing more than once on the ballot (10 ILCS 5/28-7 (West 2020)) but whether section 28-5 authorized Tirio to make these legal determinations based on a comparison of the township's proposition to the referendum that appeared on the March 2020 ballot. Our interpretation of the plain and ordinary meaning of section 28-5 indicates that Tirio was not so authorized.

¶ 64 When a governing board adopts a resolution to initiate a public question but the question may not be placed on the ballot for certain enumerated reasons, section 28-5 of the Election Code requires a county clerk in receipt of the proposition to notify the board of the prohibition. *Id.* § 28-5. The clerk's authority to give the notification is triggered only when the public question is prohibited by "the limitations of Section 28-1." *Id.*

¶ 65 Section 28-1 is titled "Application of Article; procedure; number of propositions limited," and is set forth in three parts. See *id.* § 28-1. One part concerns the procedures for initiating, submitting, and printing public questions to referendum. For example, section 28-1 provides that a statute authorizing the

- 13 -

initiation of a public question by a petition of voters governs "the number of signatures required, the qualifications of persons entitled to sign the petition, the contents of the petition, the officer with whom the petition must be filed, and the form of the question to be submitted."[2] *Id.*

¶ 66    Another part of section 28-1 limits the number of public questions that may be submitted to referendum at the same election. *Id.* Public questions are eligible to appear on the ballot only for certain elections, depending on whether the voters are scheduled to cast votes for candidates. *Id.*

¶ 67    Defendants do not contend that the aforementioned limitations in section 28-1 prohibited the placement of the dissolution proposition on the November 2020 ballot. Instead, they rely on the third, introductory part of the section, which provides generally that "[t]he initiation and submission of all public questions to be voted upon by the electors of the State or of any political subdivision or district or precinct or combination of precincts shall be subject to the provisions of *this Article*." (Emphasis added.) *Id.*

¶ 68    Defendants interpret section 28-5's reference to "the limitations in Section 28-1" to mean the application of article 28 in its entirety, including section 28-7's prohibition against the same proposition appearing on the ballot more than once within 23 months.

¶ 69    Defendants' interpretation would grant a county clerk discretion to prohibit a public question from appearing on the ballot for noncompliance with *any* part of article 28, and not just the provisions governing public questions initiated by resolution or ordinance. Article 28 also applies to public questions initiated by petitions and "backdoor referenda."

---

[2]We note that "the limitations of Section 28-1" incorporate the form requirements of section 24-30 of the Township Code (60 ILCS 1/24-30 (West 2020)). Before the township submitted the proposition at issue in this appeal, it submitted a proposition that was not in the proper form to appear on the ballot because it contained provisions affecting the township's finances following dissolution. *Id.* Section 28-5 authorized Tirio to reject the proposition based on its noncompliance with section 24-30, because section 28-1 provides "[t]he method of initiating the submission of a public question shall be as provided by the statute authorizing such public question, or as provided by the Constitution." 10 ILCS 5/28-1 (West 2018).

¶ 70    Enforcing the myriad rules set forth in article 28 potentially requires investigation of underlying facts, interpretation of the language contained in the various sections, and making legal determinations based on those interpretations. For example, section 28-8.1 requires the Secretary of State

> "to prepare a statement setting forth in detail the section or sections of the law sought to be amended by the vote, together with statements and suggestions as may be necessary for a proper understanding of the proposition. The statements and suggestions shall be submitted to the Attorney General for his approval." *Id.* § 28-8.1.

Moreover, section 28-11 governs the design of a standard and scientific random sampling method for the verification of petition signatures. *Id* § 28-11. Reviewing the Secretary of State's statement for compliance with section 28-8.1 and analyzing the methodology for petition signature verification under section 28-11 are nuanced legal and factual issues that arise outside the limitations of section 28-1. Such decisions are not ministerial acts. They are better suited to a judicial determination.

¶ 71    The best indicator of legislative intent is the language of the statute, given its plain, ordinary meaning. If the General Assembly had intended to authorize a county clerk to reject a dissolution proposition for any violation of article 28, section 28-5 would refer to "the application of this Article," not to "the limitations of Section 28-1."

¶ 72    Our interpretation of section 28-5 and its reference to 28-1 is dispositive of the appeal. However, we take this opportunity to reconcile our holding with *Dillon* and *North v. Hinkle*, 295 Ill. App. 3d 84 (1998), as the decisions were the focus of the parties and the courts below. The appellate court relied on *Dillon* and *North* to conclude that Tirio exceeded his authority by comparing the township's proposition to the March 2020 ballot. But the decisions do not dictate the outcome of this appeal because they involved a clerk's authority to reject nomination papers and petitions, not resolutions, under a different section of the Election Code.

¶ 73                                    1. *Dillon*

¶ 74        In *Dillon*, residents submitted a petition to have the town clerk place an "anti-saloon" question on the ballot. *Dillon*, 266 Ill. at 273. The clerk rejected the question on the ground that the signatures on the petition were not given by legal voters or in person and because the sworn statements were neither signed nor sworn to by town residents. *Id.* at 274. The residents obtained a writ of *mandamus* to compel the clerk to place the question on the ballot, and this court affirmed the judgment. *Id.*

¶ 75        The *Dillon* court held that, where a petition appears on its face to comply with statutory requirements, the clerk may not look beyond the face of the petition to determine whether it complies; he or she must submit the question to the voters. *Id.* at 275-76. The clerk's consideration of anything beyond the four corners of the petition amounted to an improper investigation:

            "The petition, on its face, appeared to be in compliance with the law and *prima facie* sufficient to authorize and require the submission of the question to a vote in the political subdivision. [Citation.] If it was illegal in the respects claimed, that could not be determined from an examination of the petition itself but required an investigation outside of the petition." *Id.* at 275.

¶ 76        The court held that the petition was in "apparent conformity" with the law because the alleged defects could not be examined from the face of the petition and the clerk was obligated to submit the question to the voters. *Id.* at 277. The court described the town clerk as a ministerial officer with no discretionary power except to examine the face of the petition to determine if it complied with statutory requirements. *Id.* However, the court emphasized that facial defects in a petition are grounds for rejection:

            "If [the petition] does not purport to be signed by the requisite number of voters of the town, if it does not purport to be signed by the voters in their own proper persons, and in other respects does not purport to conform to the requirements of the law, it would impose no duty upon the clerk to cause the question to be submitted at the election; but in determining these things the clerk acts as a ministerial and not as a judicial officer." *Id.* at 276.

¶ 77    The ministerial officer's "only function is to determine whether, upon the face of the petition, it is in compliance with the law." *Id*.

¶ 78                                    2. *North*

¶ 79    In contrast to *Dillon*, the clerk in *North* was authorized to reject the submission at issue because it was deficient on its face. *North*, 295 Ill. App. 3d at 88-89. The plaintiffs in *North* filed nominating papers to place their names on the ballot in a municipal election, but the city clerk refused to certify their names for the ballot because they failed to include a statement of candidacy, as required by section 10-5 of the Election Code (10 ILCS 5/10-5 (West 1996)). *North*, 295 Ill. App. 3d at 85. The appellate court affirmed the denial of *mandamus* relief because the plaintiffs had conceded that their nominating papers were not in "apparent conformity" with the election law, as required by section 10-8. *Id.* at 88. The court noted that the omission of the statements of candidacy from the nominating papers could be determined from the face of the papers themselves and that the clerk was "empowered to make that ministerial determination." *Id.* at 88-89.

¶ 80                        3. Section 10-8: "Apparent Conformity"

¶ 81    *Dillon* and *North* stand for the proposition that, when a candidate's nominating papers or a petition for a public question appear on their face to comply with the statutory requirements of the Election Code, a clerk may not invoke section 10-8 and look beyond the face of the submission for a basis to reject it; he or she must certify the candidate's name or submit the question to the voters. *Dillon*, 266 Ill. at 275-76; *North*, 295 Ill. App. 3d at 88-89.

¶ 82    Both *Dillon* and *North* turned on whether the submissions at issue were in "apparent conformity" with the election law, as required by section 10-8. With two exceptions not relevant here, section 10-8 addresses candidates' nominating papers and petitions for public questions:

"*Certificates of nomination and nomination papers, and petitions to submit public questions to a referendum*, being filed as required by this Code, and being in *apparent conformity with the provisions of this Act*, shall be deemed to

- 17 -

be valid unless objection thereto is duly made in writing within 5 business days after the last day for filing the certificate of nomination or nomination papers or petition for a public question ***." (Emphases added.) 10 ILCS 5/10-8 (West 2018).

¶ 83    Section 10-8 authorizes a clerk to reject nomination papers and petitions to submit public questions if they are not in "apparent conformity" with the Election Code, but the section makes no reference to public question resolutions. Thus, section 10-8 does not apply to public questions initiated by resolutions adopted by a governing body, like the township. *Dillon* and *North* do not dictate the outcome of this appeal because they involved a clerk's authority to reject nomination papers or a petition under section 10-8 of the Election Code, while Tirio purported to exercise his authority to reject a resolution under section 28-5.

¶ 84                          4. Section 28-4: Objections

¶ 85    Finally, defendants argue that, because the proposition was not subject to a statutory objection procedure, Tirio's rejection under section 28-5 was the only means of enforcing section 28-7. Section 28-4 of the Election Code provides a mechanism for objecting to referenda. Section 28-4 is integrated with section 10-8, and both apply to public questions initiated by petition but not by resolution. *Id.* § 28-4 (the provisions of sections 10-8 through 10-10.1 relating to objections to nominating petitions, hearings on objections, and judicial review shall apply to objections to *petitions* for the submission of questions of public policy); *id.* § 10-8 (the objection provisions of sections 10-8 through 10-10.1 shall "apply to and govern *petitions* for the submission of public questions under Article 28" (emphasis added)).

¶ 86    Defendants reason that, because there is no statutory mechanism for the public to object to a public question initiated by resolution, there is no "gatekeeper" other than the election official to prevent a question in violation of section 28-7 from being placed on the ballot.

¶ 87    But the absence of a *statutory* procedure for objecting to public questions initiated by resolution does not justify misreading section 28-5. Section 28-7 can be enforced through an action by a private citizen or the county clerk for, *inter alia*,

- 18 -

declaratory judgment or injunctive relief to remove the question from the ballot. The circuit court described a citizen's action as impractical and ineffective because it would "kick[] the can down the road" and "promote chaos." But the same could be said of authorizing a county clerk with the discretion to enforce article 28, which would force a referendum's proponent to file a *mandamus* action to remedy an erroneous rejection of a public question. The circuit court was concerned that Tirio would be "shirking his duties" by "rubberstamping a submitted public question he believes to be violative of the Election Code," but a county clerk may also seek a judicial determination to confirm his finding of invalidity.

¶ 88    Most significantly, defendants' policy argument is unsupported by the plain and ordinary meaning of the statutory language. The unambiguous text of section 28-5 does not authorize a clerk to reject a proposition on the ground that the same proposition appeared less than 23 months earlier, because section 28-7 is outside the limitations of section 28-1.

¶ 89                                III. CONCLUSION

¶ 90    In summary, when a township board of trustees in McHenry County adopts a resolution to initiate and submit to the voters a public question to dissolve the township, the proposition must adhere to article 28 of the Election Code. *Id.* art. 28. However, section 28-5 provides that a county clerk is authorized to give notice that the public question may not be placed on the ballot only when the question is prohibited by "the limitations of section 28-1." *Id.* § 28-5. The reason given for rejecting the proposition in this case—the prohibition against placing the same proposition on the ballot more than once in 23 months—is set forth in section 28-7, not section 28-1. Therefore, section 28-5 did not authorize the county clerk to prohibit the dissolution proposition from appearing on the ballot due to a violation of section 28-7. To resolve the appeal, we need not consider whether the proposition actually violated section 28-7.

¶ 91    Appellate court judgment affirmed.

¶ 92    Circuit court judgment reversed.